GEORGE L. BROOKS, Appellant, *v.* C. ARTHUR TAYLOR, A. WAYNE BURTON, HAROLD L. SPRINGER, ROBERT P. BARNETT, ROBERT G. HACKETT, GEORGE EHINGER, KARL K. BROWN, being and comprising the Delaware State Board of Corrections, and ELWOOD H. WILSON, Director of the Delaware State Board of Corrections, Appellees.

EDWARD J. CARPENTER and NATHAN WATSON, Petitioners, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY and THE HONORABLE ANDREW D. CHRISTIE, sitting as Judge of said Court, Respondent,

and

THE STATE OF DELAWARE, *ex rel.* Januar D. Bove, Jr., Attorney-General, Intervening Respondent.

(*September* 18, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*John P. Sinclair* (of Berl, Potter and Anderson) for appellant Brooks.

*Harvey B. Rubenstein* for petitioner Carpenter, and *Howard M. Handelman* for petitioner Watson.

*Joseph J. Longobardi, Jr.,* Deputy Attorney-General, for the State.

*Herbert L. Cobin* for Prisoners Aid Society of Delaware, and *Sol Rubin* (of New York City) for National Probation and Parole Association, *amici curiae* granted leave to file a brief.

Supreme Court of the State of Delaware, Nos. 14 and 17, 1959.

SOUTHERLAND, C. J.:

The essential question in these cases concerns the jurisdiction of the Family Court of New Castle over a charge of rape against youths less than eighteen years of age.

A subsidiary question concerns the jurisdiction of the Family Court to discharge by habeas corpus youths held for the Superior Court and indicted in that court.

The facts are as follows:

On July 26, 1958, Brooks, Carpenter and Watson were arrested and charged with the offense of rape. On that date each of the three was seventeen years of age. They were given a hearing in the Municipal Court and committed to jail in default of bail.

On October 17 Brooks petitioned the Superior Court for a writ of habeas corpus, alleging that the Family Court of New Castle County had exclusive jurisdiction over him, and that his commitment by the Municipal Court was illegal.

*On October 20 all three were indicted for rape.*

Sometime in October or November (the exact date does not appear in the record) Carpenter and Watson petitioned the Family Court for writs of habeas corpus on the ground that their commitment was illegal.

On October 29, the Family Court entered an order declaring the commitment of Carpenter a nullity and directing his release.

On November 10 a similar order was entered on Watson's petition.

Thereafter Carpenter and Watson moved to dismiss the indictment. These motions, together with the Brooks' petition, were heard together. The Superior Court on February 9 filed its opinion holding that the Family Court had no jurisdiction of any of the cases. Orders denying relief were thereafter entered.

Brooks has appealed. Carpenter and Watson petition for a writ of prohibition to the Superior Court. All three will for brevity be referred to as the defendants.

### 1. The jurisdiction of the Family Court over the crime of rape.

By 10 *Del. C.* § 951(1) and (2), the Family Court given exclusive original jurisdiction in all proceedings in New Castle County—

"(1) Concerning any child residing in New Castle County who is alleged to be delinquent, neglected or dependent;

"(2) Concerning any child residing in New Castle County charged with having violated any law of this State or any charter, ordinance or regulation of a sub-division thereof."

Section 901 defines a child as a person who has not yet attained his eighteenth birthday; and a "delinquent child" as "any child who violates any law of this State" etc.

Section 957 provides:

"The Court shall have no jurisdiction, other than that of a committing magistrate, in cases wherein a child, as defined in this chapter, is charged with the commission of a capital felony."

See also 10 *Del. C.* § 979.

By the act of April 2, 1958 (51 *Del. L.* c. 347), punishment by death for any crime in this State was abolished.

What was the effect of this act upon the jurisdiction of the Family Court over offenses theretofore capital? Defendants and the *amicus curiae* say that its effect was to render meaningless and therefore inapplicable an exception to the otherwise unlimited jurisdiction of the Family Court and thus automatically extend that court's jurisdiction to all offenses committed by those under eighteen. The State contends (1) that the repeal of capital punishment cannot impliedly affect the jurisdiction of the court, which under 11 *Del. C.* § 2701(f), is only such criminal jurisdiction as is *expressly* conferred by law; and (2) in any event the act abolishing capital punishment was not passed by a two-thirds vote and could not therefore grant additional jurisdiction to the Family Court because of the provisions of Art. IV, Sec. 28, of our Constitution, *Del. C. Ann.* The court below accepted the second argument as sound.

The section referred to provides:

"Section 28. The General Assembly may by law give to any inferior courts by it established or to be established, or to one or more justices of the peace, jurisdiction of the criminal matters following, that is to say—assaults and batteries, carrying concealed a deadly weapon, disturbing meetings held for the purpose of religious worship, nuisances, and such other misdemeanors as the General Assembly may from time to time, with the concurrence of two-thirds of all the Members elected to each House, prescribe.

"The General Assembly may by law regulate this jurisdiction, and provide that the proceedings shall be with or without indictment by grand jury, or trial by petit jury, and may grant or deny the privilege of appeal to the Superior Court; provided, however, that there shall be an appeal to the Superior Court in all cases in which the sentence shall be imprisonment exceeding one (1) month, or a fine exceeding One Hundred Dollars ($100.00)."

On behalf of the defendants it is first argued that Section 28 of Art IV has no bearing upon the question, since it deals only with the granting of criminal jurisdiction of misdemeanors, and acts committed by juveniles are not crimes. It is also said that under Section 28 of Art. IV no inferior court may be given jurisdiction over felonies, but that for years the Family Court has been given jurisdiction over offenses that would be felonious if committed by adults, and that jurisdiction has never been questioned. Hence Section 28, it is argued, has no application to the Family Court.

The first argument is little more than a play upon words. When it is said that rape, murder and burglary are not "crimes" when committed by juveniles, what really seems to be meant is that they no longer are punishable by fine or imprisonment, nor do they entail any civil disabilities. But they are still violations of state laws (*cf.* § 951(2), *i.e.*, "criminal matters or offenses" (*cf.* § 980). When a juvenile commits an offense he is arrested and brought before the Family Court, or held for appearance before that court. In certain cases he may be prosecuted and tried in the Superior Court as an adult. See the act of April 7, 1947. 11 *Del. C.* §§ 2711-2712. And we note that the title of that act refers to "crimes committed by juveniles."

It is said that a juvenile cannot commit a "crime" because a crime is defined as an act or omission forbidden by statute or indictable at common law "and punishable upon conviction by death, or imprisonment, or fine", etc. 11 *Del. C.* § 101. Since a

juvenile is not convicted, fined or imprisoned, he cannot (it is said) commit a criminal act.

This argument confuses the nature of the act and its consequences. The act remains a "punishable" one and a criminal one, even though in the case of juveniles punishment as such is seldom inflicted. Indeed, the argument proves too much, for if it were to be accepted, a juvenile could never be tried and convicted of crime; whereas the act of 1947, above referred to, specifically authorizes such a trial and conviction.

We have determined that the Family Court is an inferior court within the meaning of Art. IV, Sec. 28 of the Constitution, and that its jurisdiction comprises "criminal matters". What then is the effect of the clause of that section which on its face limits the jurisdiction of such courts to "misdemeanors"?

From the time of the establishment of the Juvenile Court of the City of Wilmington in 1911, the court has had jurisdiction of *all* non-capital crimes committed by juveniles, regardless of whether they be felonies or misdemeanors. See Vol. 26, *Del. L.* c. 262, Sec. 3. This jurisdiction, so far as we know, has never been questioned. This history constitutes a very persuasive practical construction of Section 28 by the General Assembly and by the bench and bar. Aside from this fact, however, we think that such a construction is a reasonable one.

In modern times the distinction between felonies and misdemeanors has lost much of its importance so far as concerns punishment. At common law a felony was a crime punishable by forfeiture of goods. Capital punishment might also be inflicted, according to the degree of guilt. 4 *Blackstone's Commentaries* 94; 1 *Bouv. Law Dict.*, Rawle's Third Revision, p. 1202. Punishment by forfeiture of goods has long been obsolete, both in England and the United States. The distinction between felonies and misdemeanors is now largely arbitrary and dependent on legislative definition. 14 *Am. Jur.* "Criminal Law", § 13. In Delaware any crime or offense not designated a felony is a

misdemeanor. 11 *Del. C.* § 101. In a general way, statutory felonies embrace the most serious common-law offenses, such as murder, rape, burglary, arson, and so forth, and are usually punishable by terms of imprisonment longer than those applicable to misdemeanors. But no consistent statutory pattern exists.

The important remaining distinction lies in the loss of the right of suffrage upon conviction of felony. Constitution, Art. V, Sec. 2. Conviction of felony may also be used to impeach a witness, although the common-law testimonial disqualification has been abolished. 10 *Del. C.* § 4303. These consequences are in the nature of civil penalties.

Historically, therefore, and at the present day the distinction between felonies and misdemeanors is related to the punishment inflicted and the consequences entailed, the distinction being now of considerably less importance than formerly.

All parties agree that the purpose of the juvenile court acts is the rehabilitation of the juvenile. The court seeks to help—not to punish. The adjudication ofdelinquency is not a conviction of crime nor does it entail any civil disability. 10 *Del. C.* § 982. Fines, and imprisonment in the state, county or city prisons, are not included in the enumeration of the steps the court may take upon adjudication of delinquency. 10 *Del. C.* § 984.

As above shown, the distinction between felonies and misdemeanors is related to the severity of the punishment and to the civil disabilities following conviction. Since these consequences do not follow adjudication in the Family Court, the distinction in Section 28 becomes meaningless. The limitation of jurisdiction in this section is obviously designed to deny to the inferior court, which acts without a jury, the power to deal with the more serious offenses entailing severe punishment. This idea is carried further by the appeal provisions to the section, inserted to safeguard the right of trial by jury in all but trivial cases. The distinction made in the Constitution, therefore, has

its roots in the protection afforded to persons who may be *convicted of crime and punished* by the inferior courts. Since conviction and punishment form no part of the discipline imposed upon juveniles by the Family Court, the felony-misdemeanor distinction contained in Section 28 is, as to that court, wholly inapplicable.

■ To summarize: the charge of an offense against a juvenile is a "criminal matter" within the meaning of Sec. 28; but the limitation of jurisdiction in that section based upon the distinction between felonies and misdemeanors is inapplicable.

■ It follows from the above conclusion that acts establishing juvenile courts and specifying or extending their jurisdiction must be passed by a vote of two-thirds of all the members of the General Assembly. And in practice this restriction has been largely observed by the General Assembly itself. See the act of April 4, 1911, 26 *Del. L.* c. 262, creating the Juvenile Court of the City of Wilmington; act of May 2, 1933, 38 *Del. L.* c. 197, creating the Juvenile Court of Kent and Sussex Counties; act of April 20, 1945, 45 *Del. L.* c. 241, creating the present Family Court; and the act of June 21, 1951, 48 *Del. L.* c. 364, broadening the jurisdiction of the Juvenile Court of Kent and Sussex Counties.

Defendants make the further argument, noted above, that the act of April 2, 1958, abolishing capital punishment, is not an amendatory act extending the jurisdiction of the Family Court. Its effect, they say, is merely to render inoperative an exception to the Family Court jurisdiction, just as the constitutional requirement of a three-judge court to try a capital felony is now said to be obsolete by operation of law. *People v. Roper*, 259 *N. Y.* 170, 181 *N. E.* 88, is cited.

■ This argument has surface plausibility, but it ignores the fundamental nature of the change that the act of 1958 is said to have brought about. This is nothing less than a wholesale transfer from the Superior Court to the Family Court of juris-

diction over the four crimes that were formerly punishable by death, *viz.*, treason, murder, rape and kidnaping. Such a broad addition to the jurisdiction of an inferior court can be accomplished under our Constitution only by the prescribed method of a two-thirds vote. This requirement is fundamental, and its scope is unaffected by the form in which the amendatory legislation is cast. The important consideration is its effect.

The trial judge held that since the act abolishing capital punishment was not passed by a two-thirds vote it was ineffectual to increase the jurisdiction of the Family Court.

We are of the same opinion.

### 2. *Habeas Corpus Judgments.*

The defendants Carpenter and Watson build an argument on the judgments of the Family Court discharging them on habeas corpus. Defendants say that the Family Court had jurisdiction under the statute to issue the writs, and that the judgments of discharge are *res judicata* as to the pending indictments, since no appeal was taken. In any event, defendants say, the Family Court had jurisdiction to determine its own jurisdiction, and the judgments cannot be attacked collaterally.

The habeas corpus proceedings were based upon the act of April 7, 1947 (46 *Del. L.* c. 213), amending the Family Court Act by conferring upon that court concurrent jurisdiction—

"To hear and determine writs of Habeas Corpus or other proceedings brought for the purpose of gaining or retaining the possession or legal custody of any child as defined in this act, or for the purpose of determining whether any child as defined in this act is being unlawfully detained by any person, agency, or institution."

The basic purpose of this amendment is clear. Formerly jurisdiction to issue the writ of habeas corpus to determine questions of the custody of minors at the suit of a parent belonged

to the Superior Court, having been conferred by the act of 1881 (16 *Del. L.* c. 477). See 10 *Del. C.* § 6904. Such proceedings, though in form habeas corpus proceedings, are often in reality controversies between husband and wife (or between others *in loco parentis*), in which the real question is, who is the more suitable person to have the control of the child? The usual order is an award of custody, not a discharge from illegal restraint. See 1 *Bailey on Habeas Corpus,* c. XVII, "Custody of Children." Clearly the purpose of the act of 1947 was to give the Family Court concurrent jurisdiction with the Superior Court over habeas corpus proceedings in such cases. When the Code was compiled the editors added to 10 *Del. C.* § 6901 a reference to this jurisdiction. That section declares that the writ of habeas corpus may be awarded by the family or juvenile courts "in cases which are otherwise within their jurisdiction." The annotators' comment refers to that jurisdiction as one "involving custody of children." It is plain that the act of 1947 has been regarded as one of limited scope.

Now, in the instant case, the Family Court held that the act conferred upon it jurisdiction to discharge prisoners held in default of bail for the Superior Court and actually under indictment in that court. The effect was an attempt by the Family Court to divest the Superior Court of jurisdiction over two prisoners theretofore asserted by the latter court. This startling result is sought to be sustained by the language of the act referring to children unlawfully detained by any "agency, or institution".

There is no justification whatever for such literal—indeed, blind—reading of the phrase referred to. It is merely an auxiliary clause designed to enable the Family Court to inquire into the propriety of the custody of a child detained in one of the institutions to which juveniles are committed. It has nothing to do with persons committed for trial before the Superior Court and hence under the jurisdiction of that court. It is absurd to suppose that the General Assembly intended to give the Family

Court power to review and control the jurisdiction of the Superior Court. Even if the Family Court had power to issue the writ, it would have been error to do so, for the Superior Court had asserted jurisdiction, and the attempted use of the writ to interfere with that jurisdiction was clearly improper. 25 *Am. Jur.*, "Habeas Corpus", § 108.

■ But the fundamental consideration here is that the Family Court had no jurisdiction of the subject matter of the causes before it. It is a court of limited—not general—jurisdiction. It had no power to issue the writ, and its attempt to interfere with the proceedings in the Superior Court was a nullity.

Moreover, this lack of jurisdiction is apparent upon the face of the orders attempting to discharge the prisoners from the commitment holding them to appear before the Superior Court. In such a case a judgment may be attacked collaterally for want of jurisdiction, particularly if the judgment has been rendered by a court of limited jurisdiction. See 30A *Am. Jur.*, "Judgments", § 889. Defendants cite authorities concerning the right of a court of general jurisdiction to determine its own jurisdiction over the subject matter if it admittedly has jurisdiction of the parties. These are all beside the point. As above stated, the proceedings purporting to discharge the defendants were a nullity.

It follows from the foregoing conclusions that the judgment below against Brooks must be affirmed; and that the petition of Watson and Carpenter for writs of prohibition must be denied.

The *Brooks* case is remanded to the Superior Court of New Castle County for such further proceedings as may not be inconsistent with this opinion.