194 A.2d 558 (1963)
The STATE of Delaware, Plaintiff,
v.
Carl Grant FOWLER, Defendant.
Superior Court of Delaware, New Castle.
October 17, 1963.
E. Norman Veasey, Chief Deputy Atty. Gen., for the State.
James L. Latchum, of Berl, Potter & Anderson Wilmington, for defendant.
*559 DUFFY, President Judge.
On September 17, 1963, Carl Grant Fowler was indicted by the Grand Jury of New Castle County for manslaughter, in violation of 11 Del.C. § 575. The events leading to indictment present a classic case of a man bedeviled by a guilty conscience for almost a decade. The facts are these:
Fowler was born on November 12, 1935 in West Virginia. In October or November 1952 he came to live with his father in Wilmington, Delaware. Just after he became seventeen years of age, and with his father's consent, he tried to fulfill an ambition of long standing by enlisting in the Navy at the recruiting office in Wilmington; but he was turned down because he was underweight (at about 105 pounds). His interest in military service, however, continued and he made up his mind to try again. He found work in Delaware and continued to work until a short time prior to November 1953.
On the evening of November 3, 1953, Fowler began to drink with a friend, Bobby Richardson. After leaving a bar, Richardson asked a man, a stranger on a street corner, for a cigarette. The man, Bart J. Forkin, gave him the "makings". He then gave Richardson a match. For reasons which he cannot now explain, Fowler pushed Forkin who fell and hit his head on the sidewalk; he died two days later.
Just after Forkin fell, Fowler and Richardson bent over him. A car approached. *560 They were frightened. They ran. They went to Fowler's house some three blocks away.
Fowler did not tell his father, an alcoholic, of what had happened. Fowler says he did nothing to conceal himself from the police.
On November 12, 1953 Fowler became eighteen and registered with the Draft Board in Wilmington on that day. He gave his correct name and address. On the same day he enlisted in the Air Force and was ordered to basic training in New York State. Thereafter, he was assigned to a base in Ohio, then to Korea, then to a base at Reno, Nevada.
From time to time Fowler returned to Wilmington. He came in January 1954 to see his father before going to Korea. In June 1955 he came to visit his brother shortly after his father died. Fowler was discharged at Reno on April 9, 1957. Shortly before discharge, he married a girl who lived there.
Upon his discharge, Fowler came to Wilmington where he worked for a brief time. He then returned to Reno and has lived and worked there during most of the time since June 1957. But he came to Wilmington on at least one additional occasion, looking for work.
Since his registration with the Draft Board in Wilmington at age eighteen, Fowler has continuously kept it advised of his whereabouts. He did this as recently as October 1961.
Fowler says that until July 1963 he never discussed his involvment in Forkin's death with anyone other than Bobby Richardson. He says he did not discuss it with his wife. But,
"* * * I can only say that my conscience has never let me rest; I have never had a happy night for the past ten years. As long as I could keep busy working in the Air Force and after my discharge, I could forget but at nights I could not. This led me to drink in an attempt to `forget'. I performed my work in the Air Force in a satisfactory manner but I drank off duty at night to try to forget and this led to difficulty for I was arrested a number of times for public drunkenness. The end result was that I was given an `undesirable discharge' from the Air Force after a board hearing on the ground that I had repeatedly committed minor offenses off-duty in violation of good military discipline as a result of drinking which the Air Force considered immaturity involving emotional instability.
"As before stated, I got married 3 or 4 months prior to my discharge from the Air Force in 1957. I took up residence in Reno, Nevada where I have lived except for the short period when I was in Washington, D. C. I have a wonderful wife and five children, the last was born in August, 1963 while I have been held in Delaware on this present charge. I have always until now been able to provide for them adequately. But my conscience was always with me. At night, when I wasn't working, I drank to forget and this caused my wife to think my drinking was caused by her. I have wanted to tell of my participation in the Forkin incident many times over the past 10 years but I never could bring myself to do it. I have had bad dreams and night mares which were getting worse; my wife couldn't understand them and finally the pressure became too great; I just couldn't stand it any longer. I could see my family life was threatened so I voluntarily went to see Chief of Detectives William Broadhead of the Reno Police, whom I knew, and told him the above story."
Fowler waived extradition and was brought to Delaware on July 13, 1963. This Court appointed counsel for him prior to the preliminary hearing conducted pursuant to our Criminal Rule 5, Del.C.Ann., by the *561 Municipal Court of the City of Wilmington. In that Court Fowler moved to have the case transferred to the Family Court under 10 Del.C. § 979 on the ground that he was under eighteen at the time of the alleged offense. After briefing, the Municipal Court denied the motion, held the preliminary hearing, and fixed bail. Indictment by the Grand Jury followed.
In this Court Fowler moved to dismiss the indictment on the grounds that the prosecution is barred by the two-year period of limitations. 11 Del.C. § 2902. Issue was joined on this by the State which contends that the statute does not apply because Fowler fled from justice within the meaning of 11 Del.C. § 2903.
The Court raised the jurisdictional question sua sponte and counsel relied on the briefs filed below supplemented by oral argument.
This is the decision on the jurisdictional question and defendant's motion to dismiss the indictment.

1. AS TO JURISDICTION
The Family Court has exclusive jurisdiction in all proceedings in New Castle County concerning any child residing or found in New Castle County charged with having violated any law of this State. 10 Del.C. § 951(2). Capital offenses are excepted from this jurisdiction. 10 Del.C. § 957. A child may be indicted for rape or murder and prosecuted as a criminal in an adverse proceeding; in all other cases the Family Court takes exclusive jurisdiction and proceeds in the child's "interest". 10 Del.C. § 977(b).
A child is a person who has not yet attained his eighteenth birthday. 10 Del.C. § 901.
Fowler was seventeen when the alleged crime was commited. Hence he was a child under the statutory definition. 10 Del.C. § 901. But he was not a child under that same definition when he was arrested some ten years later. Which Court, then, has jurisdiction: the Family Court, which has exclusive jurisdiction of a "child" charged as a delinquent, or the Superior Court, which is the Court of general jurisdiction? The importance of the answer is pointed up by two significant differences in the proceedings. In the Family Court there is no right to trial by jury; there is in Superior Court. In the Family Court, upon a finding of a "delinquency" a child may be incarcerated, but the commitment may not extend beyond his twenty-first birthday. 10 Del.C. § 984(b). Following a conviction for manslaughter in Superior Court a defendant may be incarcerated for as long as thirty years.
Preliminarily, I note that it seems impossible to arrive at a jurisdictional result which wholly reconciles two pertinent propositions. First, one who has committed a crime as a child should be punished as a child. Fowler did what he did when he was legally a child; so, it can be argued with persuasion that he should not be prosecuted and punished (if convicted) as an adult. Hence, jurisdiction should be in the Family Court. But, on the other hand, an adult should not be given a child's punishment. Fowler, at age twenty-seven, can hardly in fact be said to be a "delinquent child" and he should not be prosecuted as if he were. Hence, jurisdiction should be in the Superior Court.
I turn now to the statutes and the cases.
The Family Court is an inferior court within the meaning of Art. IV, Sec. 28, of the Delaware Constitution, Del.C. Ann. Brooks v. Taylor, 2 Storey 138, 154 A.2d 386 (Supreme Court 1959). As such it has no more jurisdiction than that expressly granted by the authority under which it is created. State v. Streeter, 2 Storey 358, 158 A.2d 284 (Superior Court 1960).
Under the creating Act and subsequent amendments, the Family Court has jurisdiction of various offenses committed by adults. These include cruelty to children, offenses committed by one member of a family *562 against another, and similar conduct. See 10 Del.C. § 951. But Fowler is not charged as an adult offender under the Family Court Act. If that Court has jurisdiction, it must rest solely upon Fowler's status as a "child" at the time the alleged manslaughter was committed. And as to this the pertinent statute, 10 Del.C. § 951(2) reads as follows:
"The Family Court shall have exclusive original jurisdiction in all proceedings in New Castle County * * *
"(2) Concerning any child residing or found in New Castle County charged with having violated any law of this State or any charter, ordinance or regulation of a sub-division thereof; * * *."
The Court below concluded that jurisdiction is fixed under this statute at the time when an offender is "charged", not by his age at the time the alleged offense was committed.
The Court must adopt a construction of the statute which will best give effect to the intent of the General Assembly expressed in the words which it actually used. Taking out the residence or finding requirement, the statute reads, "any child * * * charged". A charge is the first step in prosecution of a crime. People v. Ross, 235 Mich. 433, 209 N.W. 663, 666 (Supreme Court 1926). Clearly, therefore, the Court cannot act until a child is charged. Until then there is no action, no case requiring judicial determination. And under the statute one who is charged must be a child in order for the Family Court to have jurisdiction. If he is not a child when charged, both elements of the statute do not come into play. And therefore the Family Court would not have jurisdiction.
Both words used by the General Assembly, "child" and "charge", have legal significance, both can and must be read together. Hence I conclude that in order for the Family Court to have jurisdiction of a child, he must be charged while still a child. If he is not, it follows that the Family Court does not have jurisdiction.
Considered as a whole, the Family Court Act supports the view I take of the jurisdictional question. The purpose of the Act is the rehabilitation of the juvenile. Brooks v. Taylor, supra. Care and discipline equivalent to that which should be given by one's own parents is a stated purpose of the Act. 10 Del.C. § 902. Help to young people, to juveniles  to a "child"  is the purpose of the Family Court; punishment is not. See Judge Christie's discussion in Brooks v. Taylor, 1 Storey 583, 150 A.2d 188. (Superior Court 1959).
It therefore follows that one who is in fact an adult when charged falls within neither the age bracket nor the disciplinary plan included within the Family Court scheme. And as to age, I note that a contrary conclusion as to jurisdiction would probably mean that a person over twenty-one (as Fowler is) could not be charged at all because the Family Court loses jurisdiction at that age. 10 Del.C. § 984(b). I do not believe that the General Assembly intended any such result in enacting the Family Court laws nor is such a result required under a reasonable reading of the statutes.
The difference in punishment to which I have already referred is troublesome. But the statute already permits, under certain circumstances, prosecution of a child over sixteen as an adult. While a hearing must be held before such prosecution, the point is that this goes only to the amenability of the child to the Family Court process; upon a proper finding the child may be tried as an adult and "upon conviction shall suffer the same penalties for the commission of the offense as if the child were an adult." 11 Del.C. § 2711; Brooks v. Taylor, supra. Thus, punishment may go beyond Family Court discipline.
As the briefs of counsel indicate, there is a diversity of opinion in other jurisdictions upon the question of whether age at the time of commission of an offense or age at the *563 time of prosecution is the determining factor of juvenile or Family Court jurisdiction. The view I have taken seems to be in accord with the conclusion reached in a majority of other jurisdictions.
"* * * In apparently a majority of the jurisdictions in which the question has arisen, the courts have considered that the time when the proceeding is instituted, or, as it is sometimes stated, the time of the trial, rather than that of the alleged commission of the offense or act of delinquency, controls in determining whether the juvenile court has exclusive jurisdiction." 123 A.L.R. 446.
See, also, 31 Am.Jur., Juvenile Courts, § 40; and 48 A.L.R.2d 695.
Defendant contends that if time alone enlarges the offense and increases the punishment, this is equivalent to applying ex post facto law. An ex post facto law is one which operates retrospectively in a criminal matter and which, among other things, aggravates the punishment. 16A C.J.S. Constitutional Law § 435. Here there was no change in the statute nor is it being given retroactive effect. The law at all pertinent times provided that a child charged before age eighteen submitted to one process and was liable for certain punishment; it did not provide that a child charged after his eighteenth birthday had a statutory or other legal right to be tried by the same process with its exposure to limited punishment. Under the circumstances here present, requiring Fowler to submit to Superior Court jurisdiction is not applying ex post facto law.
I conclude that Superior Court has jurisdiction because Fowler was not a child at the time he was charged with having violated the law in question.

2. AS TO THE STATUTE OF LIMITATIONS
The State contends that Fowler fled from justice within the meaning of 11 Del.C. § 2903 and that there is sufficient evidence in the record on this issue to take it to a jury. The record consists of the facts already stated and two pertinent affidavits.
The first affidavit is by Deputy Attorney General G. Francis Autman, Jr., who discussed with Fowler the events leading to Forkin's death. Mr. Autman states:
"With specific reference to his enlistment into the Air Force which occurred after the incident, in substance I asked Carl Grant Fowler whether or not the death of Bart J. Forkin, and Fowler's part therein, influenced or motivated his enlistment into the Air Force. In answer to my question his reply in substance was that the incident did in fact play some part or influence, or motivated to some degree his enlistment."
The second affidavit is by Chief Deputy Attorney General E. Norman Veasey, which puts into the record a statement given by Fowler to Wilmington City Police. One question and answer is as follows:
"Q. Why did you leave Wilmington after this occurred?
"A. I was scared and I always wanted to go into the service. Even though I knew sooner or later I was going to get caught."
The State argues that Fowler not only left the jurisdiction but did so with such close proximity to the assault upon Forkin  and under circumstances where he admitted he was scared, was concerned about being caught, and after having run away from the scene  that a jury could find that he was motivated by a desire to avoid detection when he enlisted in the Air Force.
The limitation period applicable to noncapital cases is two years, 11 Del.C. § 2902:
"No person shall be prosecuted, tried or punished, for any crime or offense not capital, unless the indictment is found or the information is instituted *564 within two years next after such offense is committed."
But the following section, 11 Del.C. § 2903, provides:
"Nothing in this chapter shall extend to any person fleeing from justice."
The limitations period does not protect one who flees from justice, that is, one who runs away, who seeks to escape, who removes himself from a given place or circumstance to avoid detection. State v. McKenzie, Del., 174 A.2d 318 (Superior Court 1961). Hence, the intention of a person who has left the jurisdiction, his purpose and reason for so going is an important matter to be inquired into. An intent to avoid detection or prosecution for a crime is an essential element in the charge of flight from justice. State v. Williams, 6 Terry 61, 69 A.2d 299 (Superior Court 1949).
But intent is not the only criterion involved. How the intent is manifested is a companion consideration. So the inquiry must be along two lines: What did Fowler do, and what was his intent at the time?
First, as to what Fowler did, it appears that the State relies primarily upon his enlistment in the Air Force. While life in that or any other branch of military service may have a certain anonymity about it, the reality is that locating or finding a person who is in the Armed Forces of the United States is relatively easy. Fingerprinting, photographing, accurate records as to the whereabouts of personnel are wellknown characteristics of military administration. I therefore have difficulty in concluding that enlistment alone amounts to the kind of concealment which the statute contemplates.
This leads to the question of Fowler's intent in enlistment. Was his purpose to flee from prosecution? Stated more precisely, is there sufficient evidence here to take the question to a jury?
The indictment charges that Fowler "did * * * flee from justice within the meaning of 11 Del.C. § 2903." Under the circumstances here present, this has to be alleged because the indictment must show on its face that the State has the right to prosecute the accused. State v. Williams, supra. And since it must be alleged it must be proved by the State, beyond a reasonable doubt.
The evidence as to Fowler's intent in enlisting is, in the last analysis, circumstantial. It therefore must be measured by the circumstantial evidence test long applied by this Court. The evidence must be such as to be inconsistent with any rational conclusion other than that Fowler enlisted with the intent to flee from justice. State v. Roberts, 2 Boyce 140, 149, 78 A. 305 (Superior Court 1910). The facts must exclude every other reasonable conclusion.
The record is filled with facts from which it could be reasonably concluded that in enlisting Fowler had an intention other than fleeing from justice. He had, for example, a prior interest in military service. He had tried to enlist when he first became seventeen years of age. He was turned down because he was underweight but decided to try again. His family situation was unstable. He was unemployed. He had no particular education or experience for civil work. In short, considering Fowler's circumstances as a whole, there is more than one reasonable hypothesis to explain his enlistment.
As to Fowler's statement to Mr. Autman to the effect that Forkin's death played some part in his decision to enlist, I do not consider this as direct evidence of an admission of flight to avoid detection or prosecution. And as to his admission that he was "scared", I cannot equate this alone to an intention to flee from prosecution. I have considered both statements along with all other evidence on the point.
I also note that Fowler's actions after enlisting are inconsistent with an intention *565 to flee from justice. He returned to Delaware from time to time for both family and business purposes. He first returned within three months after leaving. And he came with some regularity to look for employment. And at all times he kept the Draft Board in Delaware informed as to his whereabouts. All of this fits into what was, under the circumstances, a "normal" living pattern followed by Fowler.
After a careful consideration of the entire record, I conclude that the State does not have sufficient evidence to submit the intent question to a jury. It therefore follows that the statute of limitations has run and the indictment must be dismissed.