383 A.2d 283 (1977)
STATE of Delaware
v.
J. K. and R. T.
Supreme Court of Delaware.
Submitted September 10, 1977.
Decided December 14, 1977.
Stephen M. Walther, Edward F. Eaton and Mary C. Boudart, Deputy Attys. Gen., Wilmington, for the State.
Richard M. Baumeister, Asst. Public Defender, Wilmington, for J. K. and R. T.
Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.
*284 DUFFY, Justice:
This certification proceeding arises from an appeal to the Superior Court of a Family Court order determining that the Juvenile Mandatory Commitment Act, 10 Del.C. § 937, which became effective on July 30, 1976, is unconstitutional.

I
The facts before us are few and undisputed. J.K., a minor, was adjudged a delinquent in the Family Court for conduct which, if engaged in by an adult, is burglary in the second degree, 11 Del.C. § 825.[1] Based on his personal history, the State contended that sentencing under the Act was prima facie required, but the Court declared the Act unconstitutional for vagueness and for violation of Equal Protection Standards.
Juvenile R.T. was also adjudged delinquent in the Family Court for committing two separate acts which violate 11 Del.C. § 825, if done by an adult. The Court again held the Act unconstitutional and, for that reason, refused to sentence him under its terms.
The Superior Court granted the State's motion to appeal from the Family Court orders and consolidated the two cases. The following questions were then certified and accepted by this Court:[2]

*285 "1. Did the juvenile ... [J.K.], have standing to challenge the constitutionality of the Mandatory Commitment Act when he had been adjudicated a delinquent for committing a felonious offense only once between the Act's passage [sic] the date of the Family Court's determination?
2. Did the possibility that the juvenile... [J.K.] might be adjudicated a delinquent for committing [sic] separate felonious offenses within the next three years give him standing to challenge the Act's constitutionality?
3. Did the juvenile ... [J.K.] have standing to challenge the Act's constitutionality as representative of the taxpayers of the State of Delaware?
4. Does the Mandatory Commitment Act deny juveniles sentenced in Family Court under it equal protection as guaranteed by the Fourteenth Amendment since juveniles found non-amenable, can receive probation in Superior Court for the same offenses?
5. Do Sections (c)(6) and (c)(8) of the Mandatory Commitment Act satisfy the due process clause of the Fourteenth Amendment's prohibition against vagueness?
6. Does the Mandatory Commitment Act deny juveniles sentenced under it their Sixth Amendment guarantee of a right to a jury trial in capital [sic] cases because of the possibility of being incarcerated for longer than six months?"
The Act mandates certain fixed terms of commitment to the Department of Corrections of a "delinquent child" aged 14 years or older, who commits two or more specified offenses, not in the same transaction, within specified time periods. 10 Del.C. § 937 (c)(1)-(5). The mandatory commitment is subject to the Court's discretionary power to suspend all commitment in excess of six months. Section 937(c)(6).

II
Before examining the substantive and significant constitutional questions, we must first test the right of the minors to raise them.
The first three questions certified concern J.K.'s standing to challenge the Act's constitutionality.
As we have indicated, the provisions of the Act are not triggered unless a juvenile is adjudged delinquent for committing more than one act constituting an enumerated felony within a certain time period. In particular, as it pertains to J.K., the Act specifies a one-year commitment for a juvenile adjudged delinquent for committing two or more burglaries involving a dwelling house within a one-year period.[3]
J.K. had been adjudicated delinquent for committing only one burglary after the Act became law and, for that reason, we conclude that his rights are not affected by it. It follows that he lacks standing to question the Act's constitutionality. Mills v. Trans Caribbean Airways, Inc., Del.Supr., 272 A.2d 702 (1970).
As to R.T., however, it is conceded that he has the requisite standing, that is, he has been adjudged delinquent for committing *286 the required number of offenses within the specified time period provided in § 937(c) and, under the Statute, commitment is mandatory. Thus there is before us in this case a party with standing to test the constitutionality of the Act.

III
The fourth question certified is whether the Act denies equal protection to juveniles sentenced under its terms since non-amenable juveniles may receive probation in Superior Court for the same conduct.
On this issue the Family Court held that the Act denies equal protection of the laws to juveniles adjudged delinquent in Family Court.
The Court found that although the designation of juveniles as a classification (as distinguished from adults) is reasonable, the Act results in treating unequally persons within that classification. In more specific terms, the Court found determinative the fact that the Act mandates fixed terms of commitment for juveniles adjudged delinquent in Family Court, while juveniles declared non-amenable to the Family Court processes and bound over to Superior Court may be accorded probation for virtually all offenses included in the Act.

A.
In testing the equal protection guarantees, as they apply to a child under the Statute, we must examine State policy and place the issue in the juridical context in which it arises, and that requires some review of the Family Court's history.
The Family Court, from its creation in 1945, 45 Del.L. ch. 241, § 2,[4] has had (with some exceptions) exclusive jurisdiction over a child charged with a violation of State law.[5] See 10 Del.C. § 921 and its predecessors. The proceedings against a child are not criminal in concept or in practice. Indeed, the child is not even charged with a "crime," no matter what the conduct. See 10 Del.C. § 931. In the Family Court the charge is a general one of "delinquency."[6] § 921(1), (2)a. Although the term "delinquency" is not defined by the Code, its meaning is made clear by the statutory definition of "delinquent child" which appears at § 901(7):
"`Delinquent child' means a child who commits an act which if committed by an adult would constitute a crime or, who is uncontrolled by his custodian or school authorities or who habitually so deports himself as to injure or endanger the morals or health of himself or others."
See also § 921(2)a which reads:
"Any child charged in this State with delinquency by having committed any act or violation of any laws of this State or any subdivision thereof, except: .."
State policy in a proceeding against a child in the Family Court is to make it entirely a part of the Court's "civil jurisdiction," § 921, governed by a purpose stated as follows in § 902:
"(a) In the firm belief that compliance with the law by the individual and preservation of the family as a unit are fundamental to the maintenance of a stable, democratic society, the General Assembly *287 intends by enactment of this chapter that 1 court shall have original statewide civil and criminal jurisdiction over family and child matters and offenses as set forth herein. The court shall endeavor to provide for each person coming under its jurisdiction such control, care, and treatment as will best serve the interests of the public, the family, and the offender, to the end that the home will, if possible, remain unbroken and the family members will recognize and discharge their legal and moral responsibilities to the public and to one another.
(b) This chapter shall be liberally construed that these purposes may be realized."
Since 1947, State policy has also included a "non-amenability" concept in the Family Court proceedings. 46 Del.L. ch. 209, § 1. Under the present Statute, a child is held to be "non-amenable," and therefore not subject to Family Court jurisdiction, when the Family Court determines that the child will not benefit from the "rehabilitative processes of the Court," after considering the following six nonexclusive criteria:
"(1) Whether, in view of the age and other personal characteristics of the child, the people of Delaware may best be protected and the child may best be made a useful member of society by some form of correctional treatment which the Family Court lacks power to assign; or
(2) Whether it is alleged death or serious personal injury was inflicted by the child upon anyone in the course of commission of the offense or in immediate flight therefrom; or
(3) Whether the child has been convicted of any prior criminal offense; or
(4) Whether the child has previously been subjected to any form of correctional treatment by the Family Court; or
(5) Whether it is alleged a dangerous instrument was used by the child; or
(6) Whether other participants in the same offense are being tried as adult offenders."
10 Del.C. § 938(c).
If the Court determines that the child is amenable, it proceeds to hear the case. If the Court decides that he is not amenable, the child is referred for trial as an adult to the Superior Court or to any other Court with jurisdiction over the offense. § 938(c).
From the statutory history, we conclude that Delaware public policy in dealing with minors charged with violations of State law is to divide them into two classes on the basis of the offenses charged. First, those charged with first degree murder, rape, kidnapping or certain motor vehicle offenses are, in effect, prosecuted as adults; second, those charged with any other offense are proceeded against, civilly, in the Family Court. After that Court has taken jurisdiction of an alleged offense of the second category, it is processed, no matter what the conduct, under the general charge of "delinquency." The Court's duty is to proceed in the child's interest, and that of his family and the public, § 902, unless and until there is a determination that he is not amenable. § 938(c).
So much for background and general policy. Let us now focus on these cases.

B.
As we understand its ruling, the Family Court determined that the Act denied equal protection to juveniles found to be "amenable," and hence subject to mandatory commitment, because non-amenable juveniles bound over for the Superior Court might be placed on probation for committing the same acts.
Although the constitutionality of the Amenability Statute, § 938, is not questioned directly, its validity is indirectly challenged by the attack upon the Mandatory Commitment Act, § 937.
The classic test of equal protection was announced by the United States Supreme Court in F. S. Royster Guano Co. v. Commonwealth of Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920), wherein it was said:
"... [T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a *288 fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."
More recent cases applying the same test are San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); and McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). See State v. Hicks, Del.Super., 360 A.2d 150, 153 (1976), aff'd, Del.Supr., 373 A.2d 205 (1977).
The classification of minors for adult and/or juvenile disposition, based upon the amenability tests discussed herein, does not involve "inherently suspect" distinctions as do those based on alienage, nationality or race. See Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). Hence, the traditional principles of equal protection apply, requiring a reasonable basis for the classification.[7]
We emphasize that the classes under review here are not those of children and adults. The classifications are those of minors only, that is, between minors who are amenable to the Family Court rehabilitative processes and those who are not. We recognize that there is not in this lawsuit a direct attack on such classifications, but that is what underlays the surface criticism of possible difference in consequences for a minor who remains in the Family Court, and one who is bound over for Superior Court for engaging in the same conduct.
The non-amenability classification of a child is made by judicial decision under the statutory guidelines stated in § 938(c). Those are applicable, in the first instance only, (1) after a child has attained age 16 and is thereafter charged with being delinquent and (2) when a motion is made by the Attorney General or by the Court sua sponte. They are applicable also after a child has attained age 14 and is thereafter charged in accordance with 10 Del.C. § 937(c)(5). Then a hearing is conducted to determine amenability.
Clearly, the object of the classification is to sort out any minors who, because of their personal characteristics and prior criminal conduct, and considering the allegations as to death or serious personal injuries to anyone during commission of the offense, and other relevant factors, are not judged suitable for the rehabilitative processes available in the Family Court. The non exclusive criteria used to make the determination of amenability consists of a consideration of the six factors listed in 10 Del.C. § 938(c), supra, an investigation of "the child's social, educational, psychological, psychiatric and delinquency records, his previous correctional treatment, his criminal propensities, and the police investigation relating to the charge," Family Court Rule 170(c) and the record made at a "transfer" hearing at which the minor is represented by retained or appointed counsel.[8]
*289 In our judgment, a distinction drawn by a Family Court Judge in the decisional process, after having properly applied these extensive criteria, cannot be said to be arbitrary or irrational. Only after it clearly appears to the Court that a reasonable difference exists between two juveniles so as to classify one as amenable and one as non-amendable, may the Court bind each of them over to different treatment.
We find the classifications drawn by the amenability process to be reasonable, and we also find that they rest upon a basis of difference bearing a fair and substantial relation to legitimate goals. In this respect, we note that the object of the legislation, rehabilitation, particularly as to youthful offenders, is a compelling State interest. And while some of the gloss has been rubbed off the rationale discussed in Carter v. United States, D.C.Cir., 113 U.S.App.D.C. 123, 306 F.2d 283 (1962) (that is, the rehabilitative purpose is a quid pro quo for confining a juvenile offender for a longer period than an adult), see the critique of the Carter opinion in People v. Olivas, supra, the commitment aspect of the rehabilitative process is but one of many factors to be considered in the Delaware plan. The legislative judgment is that an attempt to salvage something in a juvenile who has committed the equivalent of two separate felonies in one year, § 938, should begin with a mandatory commitment for a six-month minimum.[9]
While we do not for one minute underestimate the significance of loss of liberty for even one day, we cannot say that the State's plan in such cases is so unreasonable that it violates Equal Protection norms.
In sum, we find § 938 to be constitutionally sound.

C.
Having established that § 938 is constitutional, we now consider a principal contention made by the minors, namely, that a minor in similar circumstances bound over for Superior Court may receive probation. We pause to note that neither of the minors before us argues that he is not amenable to the Family Court processes and should be tried in the Superior Court.
We agree that, under the arguments made, the Superior Court "might" place on probation a minor found guilty of the same conduct as that charged to these minors. The State does not contend that the Court is without power to do so. But this one possibility loses much of its significance when one compares the difference in treatment between an amenable and a non-amenable juvenile.
Thus a non-amenable juvenile will not necessarily receive probation in the Superior Court, but instead may be subjected to a much longer prison term that the mandatory commitment period received by an amenable juvenile for the same conduct. In these cases, for example, the conduct alleged *290 to have been committed by each minor is burglary in the second degree, a felony in violation of 11 Del.C. § 825 for which the maximum period of incarceration is twenty years. See 11 Del.C. § 4205(b)(3). A non-amenable juvenile is subject to a public trial in Superior Court and, if convicted, is adjudged guilty of a felony and thereafter loses the right of suffrage. Del. Const. Art. V, § 2. And a conviction may be used as evidence against him in future judicial proceedings.[10]
In sharp contrast, in Family Court an amenable juvenile is afforded judicial treatment in his own best interest, 10 Del.C. § 902(a); he may have expunged from the Family Court records all evidence of arrest and adjudication, including fingerprints and photographs, § 930; he is not deemed a criminal nor charged with or prosecuted for a crime in any other court, § 931; the Family Court has varying dispositional alternatives, §§ 931, 937; the Family Court has discretion to order treatment for a juvenile, § 970; and § 972 assures the juvenile privacy and informality in the Family Court proceedings. Compare the Federal Youth Corrections Act, 18 U.S.C. §§ 5005 et seq., with the Delaware Act as to differences in treatment between youthful offenders sentenced under the Federal Act and those denied sentencing under it because the Court finds that the latter will not benefit from the Act's rehabilitative purposes. Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); 18 U.S.C. §§ 5010, 5011, 5014, 5015, 5017.
The minors rely on People v. Olivas, supra, in which the California Supreme Court held that a State statute authorizing a Youth Authority to maintain control over misdemeanants for any period in excess of the maximum jail term provided for adults for the same offense, violated the equal protection requirements of both its own and the Federal constitutions. While there appear to be some similarities between the California and Delaware statutes under which a juvenile may be referred for prosecution as an adult, see the footnotes at 131 Cal.Rptr. at 57, 551 P.2d at 377, Olivas involved a factually different situation from the one before us. The California case involved a statutory scheme which discriminated in sentences between misdemeanants aged 16 to 21 and those older than 21 who committed identical acts. To the time of sentencing the two classes were each prosecuted as adults, and convicted as adults. Indeed, that is what the California Supreme Court found to be constitutionally unsound, i. e., that:
"... despite the fact that they are treated in the same manner as any competent adult during the process which results in their convictions, such persons may be subjected to significantly greater terms of incarceration as a result of those convictions solely by reason of their age...." [S]uch a sentencing scheme constitutes a denial of equal protection...."
Olivas, supra, 131 Cal.Rptr. at 59, 551 P.2d at 379.
The Olivas Court expressly recognized that which it was not deciding:
"We are not confronted by a situation in which a juvenile adjudged under the Juvenile Court Law as a juvenile contends that his term of involuntary confinement may exceed that which might have been imposed on ... [a] juvenile who committed the identical unlawful act and was thereafter convicted in the criminal courts." (Emphasis supplied.)
Olivas, 131 Cal.Rptr. at 59, 551 P.2d footnote 11 at 379.
The Delaware scheme creates a classifying technique, the amenability process, which results from the outset in treating two classes of juveniles differently, processing one through the Family Court as a juvenile, and one through the criminal courts as an adult. The plan contemplates *291 different treatment for amenable and non-amenable juveniles, respectively, not merely at the sentencing stage, but from the very early stages of a juvenile's encounter with the State.
In sum, we decide not merely an issue of enlarged sentencing nor sentencing alone, but rather an issue which involves a broad spectrum of values in the disposition of juvenile offenders. While the careful and detailed reasoning of the California Court is persuasive as addressed to the issue raised in Olivas, we do not find it helpful in deciding this appeal.

IV
The fifth question certified is whether subsections (c)(6)[11] and (c)(8)[12] of the Act satisfy the Due Process Clause prohibition against vagueness.[13]
The Family Court held that the Act violates due process requirements because, under its language, a juvenile adjudged delinquent for committing only one act might be sentenced under it. The Court reasoned that § 937(c)(6) refers to a "child ... adjudicated a delinquent" and § 901(7) defines "delinquent child" as a "child who commits an act ..." (emphasis added). Therefore, the Court concluded, there is confusion as to whether § 937(c)(6) mandates commitment of a child adjudged delinquent for one felony-type offense, or for more than one offense. And the Court found that § 937(c)(8) suffers from the same uncertainty by defining a "child" as a juvenile charged with "an act" (emphasis added).
In determining whether a criminal statute is void for vagueness, we apply the test specified in Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), wherein the Supreme Court said:
"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties ...; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."
See also United States v. Powell, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Compare United States v. Chatman, 4 Cir., 538 F.2d 567 (1976); Heard v. Rizzo, E.D. Pa., 281 F.Supp. 720, aff'd, 392 U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968).
In State v. Robinson, Del.Supr., 251 A.2d 552 (1969), this Court approved the Connally test.
Although we have under review neither a "criminal" statute nor one creating a "new offense," the Act mandates a newly devised penalty, that is, a mandatory commitment for certain offenses and, therefore, use of the Connally criteria is appropriate.
*292 Applying Connally, we find that the Act clearly satisfies due process requirements. The error in the Family Court's reasoning as to subsections 937(c)(6) and (c)(8) lies in its failure to consider the Act in its entirety. Application of Penny Hill Corporation, Del.Supr., 154 A.2d 888, 892 (1959). The first phrase of subsection (c)(6) plainly indicates that its concern is only with the multiple offender by stating that the subsection's commands are "based upon the conditions outlined in paragraph (1), (2), (3), (4), or (5)...." And the conditions so outlined refer only to a multiple offender.[14] Furthermore, although subsection 937(c)(8) defines "child" in part as a "juvenile ... charged with an act ...," read in its entirety, this subsection is modified by the phrase, "... which causes this subsection to be applicable"; and that phrase clearly refers to paragraphs (c)(1)-(5), i.e., the multiple offender.
Therefore, we find that the Act satisfies the Due Process Clause by informing juveniles subject to its terms what conduct will render them subject to its commitment procedures, without requiring them to guess at its meaning.

V
The final question certified is whether the Act denies a juvenile sentenced under it the Sixth Amendment right to a jury trial. However, counsel for the juveniles did not brief this question nor did the Family Court decide it. For this reason we do not regard the jury trial issue as before us in this case.[15]

* * * * * *
We conclude that it is unnecessary to discuss other contentions made by the parties.

* * * * * *
In summary, we conclude that the Act is constitutional, and the certified questions are answered as follows:
 Question Nos. 1-3: All are answered in the negative.
 Question No. 4: The answer is negative.
 Question No. 5: The answer is affirmative.
 Question No. 6: An answer is not required.
NOTES
[1] By statute, a "child" is a person who has not reached his eighteenth birthday. 10 Del.C. § 901. Except as otherwise indicated, we use the terms "juvenile" or "minor" synonymously with "child."
[2] Del.Const., Art. 4, § 11(9) provides that the Supreme Court shall have jurisdiction:

"To hear and determine questions of law certified to it by the ... Superior Court ... where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions by it. The Supreme Court may by rules define generally the conditions under which questions may be certified to it and prescribe methods of certification."
See also Supreme Court Rule 20.
[3] See 10 Del.C. § 937(c)(1) which provides:

"Subject to the provisions governing amenability pursuant to § 938 of this title, the Court shall commit a delinquent child to the custody of the Department of Correction under such circumstances and for such periods of time as hereinafter provided:
(1) Where he has been once or more than once adjudicated delinquent for committing separate and distinct acts or courses of conduct, not arising from the same transaction or occurrence, committed within any 1-year period, which said acts, when aggregated, and were he an adult and tried as such, would constitute 2 offenses designated as felonies under subchapter II of Chapter 5 of Title 11, or attempts thereof; or 2 burglaries in any degree involving a dwelling house pursuant to subpart B of subchapter III of Chapter 5 of Title 11, or attempts thereof; or 2 robberies in any degree pursuant to subpart C of subchapter III of Chapter 5 of Title 11, or attempts thereof, or any combination thereof, then custody shall be awarded for 1 year;[.]
[4] The Court created in 1945 was solely "The Family Court for New Castle County, Delaware." At that time, Kent and Sussex Counties retained "Juvenile Court" appellation for a virtually identical court system. In 1962, the Juvenile Court for Kent and Sussex Counties was reorganized as the "Family Court of Kent and Sussex Counties." 53 Del.L. ch. 316, § 1.
[5] Presently, there are statutory exceptions for murder in the first degree, rape, kidnapping and some motor vehicle offenses. See § 921(2)a. None of these is involved in these cases.
[6] For a discussion of the history and jurisdiction of the Family Court, see Brooks v. Taylor, Del.Supr., 154 A.2d 386 (1959); State v. Naylor, Del.Super., 207 A.2d 1, 8-11 (1965); State v. Streeter, Del.Super., 158 A.2d 284 (1960). In Brooks, this Court said:

"... the purpose of the juvenile court acts is the rehabilitation of the juvenile. The court seeks to help  not to punish. The adjudication of delinquency is not a conviction of crime nor does it entail any civil disability." 154 A.2d at 390.
[7] The minors have also argued that 10 Del.C. § 937(c) requires strict judicial scrutiny because it provides for mandatory incarceration. While a number of courts have declared that the right of personal liberty is a fundamental right, cf. People v. Olivas, Cal.Supr., 17 Cal.3d 236, 131 Cal.Rptr. 55, 551 P.2d 375 (1976), In re W, Cal.Supr., 5 Cal.3d 296, 96 Cal.Rptr. 1, 486 P.2d 1201 (1971), Bolling v. Manson, D.Conn., 345 F.Supp. 48 (1972), we are unaware of any case which supports the thesis argued by the minors and we decline to adopt it in this case.
[8] Family Court Rule 170(c) provides:

"Transfer Hearing. The transfer hearing shall not commence until the transfer investigation by the Court has been completed and is embodied in a written report. The report shall include, when available, the child's social, educational, psychological, psychiatric and delinquency records, his previous correctional treatment, his criminal propensities, and the police investigation relating to the charge. The Attorney General shall represent the State and counsel shall be appointed to represent the child, unless privately obtained, at the hearing. The report of the transfer investigation shall be made available to counsel for all parties before or at the commencement of the proceeding. After the transfer hearing, the Court shall decide whether or not the child is amenable to the rehabilitative processes of this Court and thereafter enter its order with the Clerk of the Court directing either the retention of jurisdiction or the transfer of jurisdiction to the adult court. Specific findings supporting its decision shall be a part of the Court's order showing that the transfer investigation report was reviewed and the Court took into consideration the following factors: (1) Whether, in view of the age and other personal characteristics of the child, the people of Delaware may best be protected and the child may best be made a useful member of society by some form of correctional treatment which the Family Court lacks power to assign, or (2) whether it is alleged that death or serious personal injury was inflicted by the child upon anyone in the course of commission of the offense or in immediate flight therefrom, or (3) whether the child has been convicted of any prior criminal offense, or (4) whether the child has previously been subjected to any form of correctional treatment by the Family Court, or (5) whether it is alleged that a dangerous instrument was used by the child, or (6) whether other participants in the same offense are being tried as adult offenders. When transfer is to take place, the Clerk of the Court shall file with the clerk of the adult court, the record in the case within 5 days. In those cases where the Court has decided that the child is amenable to its rehabilitative processes, the Judge who conducted the transfer hearing shall not preside at the adjudicatory hearing."
[9] 11 Del.C. § 6526 provides for a separate program for youthful offenders; thus:

"Appropriate, separate custodial care and work and training facilities shall be provided for youthful offenders by the Department [of Correction], subject to limitations of existing structures, staff and appropriations."
[10] For example: Evidence of a felony conviction is admissible to affect credibility, 10 Del.C. § 4304; and the habitual criminal statute is based on prior felony convictions, 11 Del.C. § 4214.
[11] 10 Del.C. § 937(c)(6) provides:

"Where a child is adjudicated a delinquent based upon the conditions outlined in paragraph (1), (2), (3), (4) or (5) of this subsection, the Court may, at the time of sentencing or upon subsequent hearing initiated by the filing of a petition by the Department or its duly authorized representative, due notice of which has been given to the Attorney General, suspend all of the commitment in excess of 6 months, when it determines by a preponderance of the evidence before it that such lesser period of commitment: (i) Would best serve the needs of the child, and (ii) would pose no probable threat to property or person upon his earlier release. In the event that the Court should determine that all or a portion of the commitment in excess of 6 months should be suspended as hereinbefore provided, then it shall set forth with particularity the reasons relied upon in so doing in its order or disposition;[.]"
[12] 10 Del.C. § 937(c)(8) provides:

"As used in this subsection, `child' shall mean any juvenile who is charged with an act or course of conduct occurring on or after his 14th birthday which causes this subsection to be applicable;[.]"
[13] Counsel for the juveniles did not brief this question so we assume that any contention that the Act is void for vagueness has been abandoned. But we answer the question because it has been certified and because the Family Court based its rulings on this ground.
[14] Thus, § 937(c)(1) states:

"Where he has been once or more than once adjudicated delinquent for committing separate and distinct acts or course of conduct, not arising from the same transaction or occurrence, . . .";
§ 937(c)(2) states:
"Where he is once or more than once adjudicated a delinquent based upon the commission of separate and distinct acts or courses of conduct, not arising from the same transaction or occurrence, . . .";
§ 937(c)(3) states:
"Where he is once or more than once adjudicated a delinquent based upon the commission of separate and distinct acts or courses of conduct, not arising from the same transaction or occurrence, ...";
§ 937(c)(4) states:
"Where he has been committed upon adjudication as a delinquent in accordance with paragraph (1), (2) or (3) of this subsection,...";
§ 937(c)(5) states:
"Where he has been committed upon adjudication as a delinquent in accordance with paragraph (1), (2), or (3) or (4) of this subsection...".
[15] We think it desirable, however, to invite the attention of the Trial Courts to McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); Raines v. State of Ala., 5 Cir., 552 F.2d 660 (1977); United States v. Hill, 4 Cir., 538 F.2d 1072 (1976); United States v. Torres, 2 Cir., 500 F.2d 944 (1974); Annot.: 100 A.L.R.2d 1241.