**In re the Matter of STATE of Delaware**

v.

**David SAPPS \*.**

**Nos. 0105005920, 0103003185.**

Family Court of Delaware, Sussex County.

Submitted May 16, 2001.

Decided April 15, 2002.

---

\* Pseudonyms have been assigned to the parties   to protect their identities.

Carole E.L. Davis, Dept. of Justice, Georgetown, for the State.

Merritt Burke, III, William E. Moore, Public Defender's Office, Georgetown, for defendant.

HENRIKSEN, J.

In this opinion, the Court reviews the constitutionality of Title 11, Section 768 of the Delaware Code.[1] That statute, entitled *"Unlawful Sexual Contact in the Second Degree; Class G Felony"*, reads as follows:

*A person is guilty of Unlawful Sexual Contact in the Second Degree when the person intentionally has sexual contact with another person who is less than sixteen (16) years of age or causes the victim to have sexual contact with the person or a third person.*

*Unlawful Sexual Contact in the Second Degree is a Class G Felony.*

Sexual contact is defined at Title 11, Section 761(f) as follows:

*(1) Any intentional touching by the defendant of the anus, breast, buttocks or genitalia of another person; or*

*(2) Any intentional touching of another person with the defendant's anus, breast, buttocks or genitalia*

*which touching, under the circumstances as viewed by a reasonable person, is intended to be sexual in nature. Sexual contact shall also include touching when covered by clothing.*

The particular concern of the Court is whether Title 11, Section 768 violates the equal protection rights of those defendants who are within four (4) years of age of the under sixteen (16) year old victim.[2] This particular class of defendant is created by the "teenage defendant" category set forth in Title 11, Section 762(d).[3] That Section states the following:

*(d) Teenage defendant.—As to sexual offenses in which the victim's age is an element of the offense because the victim has not yet reached his or her sixteenth birthday, where the person committing the sexual act is no more than 4 years older than the victim, it is an affirmative defense that the victim consented to the act "knowingly" as defined in Section 231 of this Title. Sexual conduct pursuant to this Section will not be a crime. This affirmative defense will*

---

**1.** Del.Code Ann. tit. 11 § 768 (2001).

**2.** It should be noted that this opinion does not address circumstances where the victim is under twelve (12) years of age.

**3.** Tit. 11, § 762(d).

*not apply if the victim had not yet reached his or her twelfth birthday at the time of the act.*[4]

A review of the constitutionality of Title 11, Section 768 necessitates a comparison of the wording, difference in classification of offenses, and difference in consequences between Title 11, Section 768 and Title 11, Section 767.[5] The wording of Title 11, Section 767 is as follows:

**Section 767. Unlawful sexual contact in the third degree; class A misdemeanor.**

*A person is guilty of unlawful sexual contact in the third degree when the person has sexual contact with another person or causes the victim to have sexual contact with the person or a third person and the person knows that the contact is either offensive to the victim or occurs without the victim's consent. Unlawful sexual contact in the third degree is a class A misdemeanor.*

As one immediately notices, the two (2) statutes differ in the following respects: 1) Title 11, Section 768 only applies where the victim is less than sixteen (16) years of age. 2) Although lack of consent is an element in Title 11, Section 767, lack of consent is not an issue in the under sixteen (16) year old defendant situation of Title 11, Section 768. However, when one factors in the teenage defendant defense noted previously,[6] the statutes are actually

similar on the consent issue, at least to that class of defendants who are within four (4) years of age of the under sixteen (16) year old victim. 3) Finally, Title 11, Section 767 is a Class A Misdemeanor. Title 11, Section 768 is a Class G Felony.

Thus, here lies the concern of the Court. Whether the victim is thirty (30) years of age or under sixteen (16) years of age, the elements of the crime, with the exception of the age of the victim, are identical for the adult offender as well as the juvenile offender who is within four (4) years of age of the under sixteen (16) year old victim. Given the identical nature of unlawful sexual contact, such as the intentional touching of the buttocks, the adult defendant who touches the buttocks of the unwilling adult victim is guilty of a Class A Misdemeanor. The teenage defendant, however, who intentionally touches the buttocks of the unwilling teenage victim is guilty of a Class G Felony.[7]

The question becomes whether one can justify the teenager being charged with a felony while the adult, for the identical conduct, disregarding the victim's age, is charged with a misdemeanor. Of course, if the focus is solely on protecting the under sixteen (16) year old victim, as the State would suggest it should be, it makes sense to charge the teenage defendant with a higher level of charge than the adult defendant. But when one focuses on

---

4. The present Title 11, Section 762(d) was enacted June 11, 1998. The forerunner of this "teenage defendant" defense also required that the defendant be a voluntary social companion of the victim. This original teenage defendant defense, which included the voluntary social companion definition, was created pursuant to V. 66 Del. Laws, c. 269 (1987).

5. The defendant could have also been charged under Title 11, Section 767.

6. The teenage defendant defense of Title 11, Section 762(d) passed June 25, 1987, subse-

quent to the passage of Title 11, Section 767 and Section 768 which were passed July 9, 1986.

7. Pursuant to Title 11, Section 761(f) "Sexual contact" means any intentional touching of the anus breast, buttocks or genitalia of another person, which touching, under the circumstances as viewed by a reasonable person, is sexual in nature. Sexual contact shall also include touching of those specified areas when covered by clothing.

the scope of the intentional touching, be it the touching of an anus, breast, buttocks or genitalia of another person, it is arguable that it does not make as much sense to hold the teenage defendant more accountable than the adult defendant for the same type of contact.

To take this one step further, one questions whether it makes sense to charge the teenage defendant identically as the adult defendant, who has unlawful sexual contact with a sixteen (16) and under victim. In this situation, both the teenage defendant and the adult defendant will receive the identical charge resulting in a Class G Felony. Thus we ask whether the teenager should be held as accountable as the adult for the same type of unlawful touching where in each case the victim is under sixteen (16). Certainly, no one disputes the wisdom of making the adult more accountable for the unlawful touching of a teenage victim compared to the same adult unlawfully touching another adult victim. In the scenario of the adult defendant, the special protection and elevated charge level given in the sixteen (16) and under victim statute makes perfect sense.

The question in this case, however, is whether there is a rational basis, when considering the overall scheme of the Delaware sex statutes, including their historical heritage, to treat a teenage defendant the same as, and even more harshly than, the adult defendant who is guilty of the same unlawful actions.

Relevant to this issue are also considerations of the general purposes of the Family Court, and the related statutory consequences for the juvenile who is adjudicated a delinquent of a felony under Title 11, Section 768. Those related consequences include sex offender registration and notification under Delaware's Megan's Law,[8] and the forfeiture of rights to use or possess firearms until age twenty-five (25).[9]

## FACTS AND BACKGROUND

This particular case is one (1) of a series of cases recently before the Court which have in common the following undisputed facts:

1. The defendant has been charged with a violation of Title 11, Section 768, being Unlawful Sexual Contact in the Second Degree, which is a Class G felony.

2. The victim is a person who is less than sixteen (16) years of age, but is twelve (12) years of age or older.

3. The defendant is no more than four (4) years older than the victim.

The issues presented in this case originally surfaced in a companion case with the same limited set of undisputed facts.[10] Although the Court indicated in the companion case that it would like the parties to file memoranda and that the Court would issue a written decision from which the date of appeal would run, the State chose to file an appeal before any memoranda were written and before the writing of the Court's decision in the companion case.[11]

8.  Tit. 11, § 4120, et. seq.

9.  Tit. 11, § 1448(a)(4).

10. *State v. Hardy,* No. 0103017446 and 0004005099 (Sussex).

11. The defendant's argument of Equal Protection, which included the concerns of the effects of the sex registration and notification statute and the weapons statute, was raised by

the Public Defender in the original companion case to this appeal. In the interim, and before memoranda could be written, the Public Defender's office, in a normal rotation, changed attorneys assigned to the Family Court. The memorandum of the subsequent Public Defender was extremely brief, consisting of one (1) sentence, and supported the position of the State. As such, it was left for the Court to fully develop the arguments

The State's appeal in the companion case was eventually dismissed by the Delaware Supreme Court for having been prematurely filed.[12] As such, the companion case, as well as other cases involving the above undisputed facts that have been stayed at the Family Court level pending this decision, will be controlled by this decision.

## LEGISLATIVE HISTORY AND STATUTORY SCHEME

The Court began its review of the Delaware criminal sex-related statutes with the 1915 revised statutes of the State of Delaware. Chapter 149 of those statutes contained four (4) provisions involving unlawful sexual relations. Of the four (4) statutes, one (1) was related to children under seven (7) years of age, another was related to females under sixteen (16) years of age, and a third (3rd) statute was related to females or males under eighteen (18) years of age. The four (4) Sections of the 1915 Code which dealt with the protection of children against unlawful sexual relations were as follows:

*4706.   Sec. 10.   Rape or Carnally Knowing Female Child Under Seven Years; Penalty; Recommendation to Mercy; Effect of:-*

*Whoever shall commit the crime of rape or who shall carnally know and abuse a female child under the age of seven years, shall be deemed guilty of a felony and shall suffer death; provided, however, that if the jury at the time of rendering their verdict, shall recommend the defendant to mercy, the court may, if it seems proper to do so, impose the sentence of life imprisonment instead of death.*

*4707.   Sec. 11.   Assault with Intent to Ravish; Penalty:-*

*Whoever shall, with violence, assault any female with intent to commit a rape, shall be deemed guilty of felony, and shall be fined not less than two hundred nor more than five hundred dollars, shall be whipped with thirty lashes, and shall be imprisoned not exceeding ten years.*

*4708.   Sec. 12.   Lewdly Playing with Female Child Under Sixteen Years; Penalty:-*

*Whoever shall lewdly and lasciviously play or toy with any female child under the age of sixteen years, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding five hundred dollars and shall be imprisoned for a term not exceeding three years.*

*4709.   Sec. 13.   Harboring Male or Female Child Under Eighteen Years for Sexual Purposes or in House of Ill–Fame; Penalty; Terms Defined:-*

*Whoever takes, receives, employs, harbors or uses, or causes or procures to be taken, received, employed, harbored, or used, a male or female under the age of eighteen years for the purpose of sexual intercourse; or whoever being proprietor or proprietress of any house of prostitution, reputed house of prostitution, or assignation, house of ill-fame or assignation, harbors or employs any male or female in any such house, under the age of eighteen years, under any pretext whatever, shall be deemed guilty of a misdemeanor and upon conviction thereof in the Court of General Sessions shall be fined not more. than one thousand dollars, or imprisoned for a term of not more than seven years, or both, at the discretion of the Court.*

*The terms "house of prostitution," "reputed house of prostitution or assigna-*

made by defendant's counsel in the first instance.

**12.** *State v. Hardy,* Del.Supr, No. 522, 2001, 787 A.2d 101 Order (2001).

*tion," "house of ill-fame or assignation" include all premises which, by common fame or report, are used for purposes of prostitution or assignation.*

The revised Code of Delaware of 1935, in Chapter 149, provisions 5166 through 5169, contained wording identical to the 1915 provisions.

The 1953 Delaware Code made certain minor changes from the prior provisions contained in the 1915 and 1935 Codes. Title 11, Section 768 of the 1953 Code contained the same wording of the previous rape statutes, but modified the minimum imprisonment time to read not less than three (3) years. The previous statutes limited the penalty to death or life imprisonment.

Title 11, Section 782 of the 1953 Code changed the name of the Section previously identified as "assault with intent to ravish" to "assault with intent to rape". The statute involving harboring a male or female under eighteen (18) years for sexual purposes or in house of ill-fame, Title 11, Section 821, remained the same, continuing to make an offense to harbor a child under eighteen (18) years of age. Title 11, Section 822 of the 1953 Code changed its wording to makes it a crime to lewdly play with a child, instead of just a female, under sixteen (16) years of age.

Thus, there was minimal change in the Delaware criminal sexual offenses from 1915 through and including the 1953 changes. These statutes, however, clearly had as their purpose the protection of the young victim against unlawful sexual aggressions.

The legislature in 1971 and 1972 made considerable changes to these earlier sex crime laws that had served Delaware for in excess of fifty (50) years since 1915. The 1971 and 1972 changes are found in Volume 58, Chapter 497 of the Laws of the State of Delaware.

The prevailing sex crime policies of the 1971–72 Legislature were reflected both in their laws and also in the commentary which accompanied those laws. Those laws were meant to protect adult victims against contact which was offensive to the adult victim and without their consent. Those laws were also intended to protect the younger victim from the adult defendant, and this was evidenced by the commentary, which stated *"Although the contact is consensual, it is with a person whom the law seeks to protect because of his or her immaturity."* [13] Also important, the 1971–72 Legislature had a defined policy and rationale of excusing contact between individuals where the victim was under sixteen (16) and over twelve (12), and the defendant was within four (4) years of age of the victim. The commentary stated: *"The rationale of excusing from criminal sanctions sexual contact between relatively young people is that such contact presents no important social harm and is widely engaged in and tolerated. This is one of the fields in which private morals must be relied upon to regulate personal behavior, and which criminal sanctions are inappropriate to punish breach of the moral law."* [14]

At the same time that the 1971–72 Legislature excused from criminal sanctions sexual contact between relatively young people, the legislature also clearly indicated its intolerance of those adults who would victimize our young. Thus, the 1971–72 Legislature raised the age of stat-

---

13. Delaware Criminal Code with commentary, 1973 Edition, Vol. 58, Chapter 497, page 205.

14. *Id.*

utory rape from seven (7) to twelve (12).[15] In the commentary which accompanied those laws, it was stated that the age of seven (7) was *"far too low"*.[16] In selecting the age of twelve (12) for statutory rape, the commentary noted that it was *"low enough to indicate some great abnormality on the part of the actor, without, on the other hand, covering cases in which a deceptively mature girl appears to be much older than she is."*[17] The commentary went on to note *"Special treatment of consensual intercourse with a child is warranted not only because the immature require protection and to prevent outrage to parental and community feelings, but also because an adult male's proclivity for sex relations with children is a recognized symptom of mental aberration, called pedophilia."*[18] Thus, the theory of the Legislature in 1971–72 was that any mistake of age by the defendant with the victim under twelve (12) *"Puts the victim at an age well below the age of normal sexual pursuit."*[19]

The 1971–72 Legislature also lowered from eighteen (18) to sixteen (16) the age under which a victim was unable to give consent, at least to someone who was at least four (4) years older than the sixteen (16) and under victim. The Legislature's commentary reflected that lowering the age from eighteen (18) to sixteen (16) was a reflection of the Legislature's then belief that the sixteen (16) year old female of the 1970s was *"considerably more knowledgeable and sophisticated than her counter-*

*part of fifty (50) or one hundred (100) years ago."*[20]

Thus, the major revisions of the 1971–72 Legislature evidenced the following legislative policies:

1. The age of statutory rape was changed from the age of seven (7) to the age of twelve (12), recognizing that the age of seven (7) was too young, and establishing the age of twelve (12) as *"an age well below the age of normal sexual pursuit".*[21]

2. The Legislature imposed penalties on adults who victimized the young, but excused criminal sanctions for sexual contact between teenagers, leaving that to church and family. That policy was demonstrated in the commentary wherein it stated *". . . identify those cases which present the greatest likelihood of imposition and which most clearly demonstrate the actor's insensitivity to society's moral demands, and to consign the rest of the cases to the realm of private moral authorities such as the church and family."*[22]

It was under these statutory philosophies that the 1971–72 Legislature created the forerunner of today's unlawful sexual contact statutes. Although Title 11, Section 761 of the 1971–72 changes was entitled "Sexual Assault", it contained in one (1) statute wording that is similar to the wording that is now contained in the two (2) present day statutes of Unlawful Sexual Contact in the Second and Third De-

15. 58 Del. Laws 497 (1972) at 1669, referencing tit. 11, § 773(3).

16. Delaware Criminal Code with commentary, 1973 Edition, Vol. 58, Chapter 497, page 216.

17. *Id.*

18. *Id.* at 217, footnote 38 (citing Model Penal Code: Tentative Draft No. 4, at 251–252).

19. *Id.* at 217.

20. *Id.* at 207, footnote 12 (*Kling*, Sexual Behavior and the Law 213(1965)).

21. *Id.* at 217, footnote 38, citing Model Penal Code: Tentative Draft No. 4, at 251–252.

22. *Id.* at 208.

grees. Title 11, Section 761 of the 1971–72 Legislature was worded as follows:

*Section 761: A person is guilty of sexual assault when he has sexual contact with another person not his spouse or causes the other to have sexual contact with him or a third person; if*

*(1) He knows that the contact is offensive to the victim; or*

*(2) He knows that the contact occurs without the consent of the victim; or*

*(3) The contact occurs with the consent of the victim, but the defendant knows that the victim is less than sixteen (16) years old and the defendant is at least four (4) years older.*

Sexual Assault is a Class A misdemeanor.[23]

Pursuant to Title 11, Section 773(4) of the 1971–72 legislative changes, sexual contact was defined as any touching of the sexual or other intimate parts of the person for purposes of arousing or gratifying the sexual desire of either party.

Certainly, Subsections (1) and (2) of the 1971–72 Section 761 were very similar to the present day Unlawful Sexual Contact in the Third Degree under Title 11, Section 767 where, under the present day act, the contact is either offensive to the victim or without the victim's consent.

Subsection (3) of the 1971–72 Section 761 concerned the victim who was less than sixteen (16) years old, and it applied only against the defendant who was at least four (4) years older. It reflected the policy of the time to refrain from prosecuting acts between young people close in age. The present day Unlawful Sexual Contact in the Second Degree under Title 11, Section 768 addresses the under sixteen (16) year old victim, but eliminates the immunity previously afforded by the 1971–72 Legislature to the teenage defendant.

Thus, the statute concerning unlawful sexual contact created by the 1971–72 Legislature clearly followed those policies, previously enunciated in this opinion, which punished the adult defendant who victimized the teenager, but at the same time, excused from criminal sanctions sexual contact between teenagers.

As one reviews the present day statutes for unlawful sexual contact, as well as all of the modern day sex statutes, it becomes apparent that our more recent Delaware Legislatures have tightened the grip on our teenagers since the leniency of the early 1970s. One could surmise this policy shift reflects a difference in how our society sees the impact of church, family and community on the raising of our children today as compared to the impact of those various entities on the raising of our children in the past. The Legislature of the early 1970s was composed of citizens who had experienced a major depression and a great world war. As such, the citizens of yesterday had lived in hard times where they were forced to rely on the support of each other, often in the form of church, family and community. It was also likely that the Delaware Legislature of the early 1970s viewed our children as residing in the home of the classic Ozzie and Harriet[24] family of the working father and the stay-at-home mother. The children in this scenario were watched after school by their mothers, as well as by the neighborhood mothers.

These mothers were willing to scold the neighborhood children when they were bad and, at the same time, were willing to help the neighborhood children if they were

---

**23.** 58 Del. Laws 497(1972) at 1664—1665.

**24.** A popular television show often used to portray the "traditional" American family.

hurt or in danger. There was generally considerable involvement in church and community affairs, and there was also respect for these entities, including school. The parents and the neighbors were available to watch the children to be sure the children exhibited respect and proper attitudes. At the same time, the children knew they were being watched. The children knew they would face consequences if they did wrong, and they knew they would be protected if they were in harms way. These children knew they were loved. They also had interested persons to instruct and exemplify for them how to live appropriately.

But the times changed. What caused these changes is open to multiple theories, the discussion of which is not critical to this decision. Although today's society appears more affluent than the past, most present-day families who are still intact have two (2) working parents with latch key children living in a neighborhood of independent living persons where few are willing to take the legal risk to watch out for another's children. This present generation has experienced few major calamities that require people to rely on each other and to consequently band together. Today's scenario, which also includes the many single parents who are working long hours to survive, is the present reality for many of our children. Many of our children today are lacking the assurance that they are secure and, perhaps, even cared about and loved. Instead of benefiting from the guidance of the previously ever present and watchful stay-at-home parents and neighbors of the 1950s and 1960s, many of our present day children have been left alone to guide and fend for themselves. Unfortunately, they are more apt to go astray.

It is not surprising, therefore, that our Legislature made a shift from the early 1970's policy of giving teenagers all-out immunity in the sex crime area, to making children today, in many cases, as accountable as adults. It becomes an extremely difficult and complicated legislative question whether we treat children identical to adults because they are unsupervised and get into trouble, or whether we treat children like children, somehow trying to make allowances for, and remedy the shortcomings of their absentee parents and mentors, who heretofore provided love and proper guidance.

Although the initial sexual contact statute, as previously stated, was adopted in the early 1970s, the present day wording of the unlawful sexual contact statutes, which do not allow the teenage defendant to escape culpability, were first set forth as part of the many major changes to the criminal sexual offenses established by the 1985–86 Delaware Legislature. These changes are contained in Volume 65, Chapter 494 of the Laws of Delaware. The 1985–86 changes also specified several new categories of crimes, including various degrees of unlawful sexual contact, various degrees of unlawful sexual penetration, and various degrees of unlawful sexual intercourse. Instead of combining all types of unlawful sexual contact into one (1) statute, a Class A misdemeanor, as was done by the 1971–72 Legislature, the 1985–86 revisions broke the contact down into both misdemeanor and felony level categories. Indeed, the wording of the 1985–86 unlawful sexual contact statutes is identical to the wording of present day statutes, except that Unlawful Sexual Contact in the Second Degree was originally a Class E felony, and is today a Class G felony.

One cannot help but note that the 1985–86 revisions appear to have abandoned the earlier philosophy of the 1971–72 Legislature which left conduct between teenagers to be resolved by family and church. The

1985–86 changes gave no special protection to the teenage defendant.[25] However, on June 25, 1987, the legislature passed what is described in the synopsis of the bill as *"technical and housekeeping changes to wording in the Delaware Code ..."* These changes added to the unlawful sexual penetration Sections a protective clause for licensed doctors and nurses. It also clarified the definition of sexual contact to include that the touching must be under circumstances as viewed by a reasonable person, to be sexual in nature. Most importantly, the June 25, 1987 changes added back a limited amount of protection for the teenage defendant with the addition of the following language to be read with offenses wherein the victim was less than sixteen (16) years of age:

*Title 11, Section 762(c): As to sexual offenses in which the victim's age is an element of the offense because the victim is less than sixteen (16) years of age, where the person committing the sexual act is no more than four (4) years older than the recipient of the act, and is a voluntary social companion of the recipient, it is an affirmative defense that the recipient consented to the act "knowingly" as defined in Title 11, Section 231. Sexual conduct pursuant to this exception will not be a crime. This affirmative defense will not apply if the victim was less than twelve (12) years old at the time of the act.*

The teenage voluntary social companion defense was certainly not the complete defense that the 1971–72 Legislature was willing to leave to "church and family". It did, however, allow certain teenage defendants who qualified as a "voluntary social companion" to raise a victim's consent as an affirmative defense.

On June 11, 1998, the Governor signed into law significant changes set forth by the Legislature in 71 Del. Laws, C. 285.

In reviewing the present laws enacted on June 11, 1998, the Court first notes that the age of under twelve (12) is again established as the age under which a child is unable to consent to a sexual act.[26] Also, the act states that a child who has not reached his or her sixteenth (16th) birthday is deemed unable to consent to a sexual act with a person more than four (4) years older than said child.[27] Thus, the act clearly provides that there can be no consent by a victim under sixteen (16), where the defendant is four (4) years older, or where any victim is under twelve (12). This is reminiscent of the earlier philosophy of the 1971–72 Legislature.

Previous laws allowed mistake as to age to be a defense where the victims were twelve (12) years of age and older. However, the present statute, although not mentioning the twelve (12) and under victim, makes it clear that it is no defense that the actor did not know the person's age, or that the actor reasonably believed that the person had reached his or her sixteenth (16th) birthday.[28]

The present law also gives child victims added protection where they are sexually approached by people in positions of trust,

---

**25.** With the initial introduction of the 1985–86 changes, Title 11, Section 761(h) defined a "voluntary social companion" as *"a victim who is in the defendant's company on the occasion of the offense as a result of the victim's exercise of rational intellect and free will, without trick, coercion or duress. A victim who is less than 16 years of age, or who is mentally defective, is not the voluntary social companion of a defendant in whose custody or care the victim is placed."*

**26.** Title 11, Section 761(j).

**27.** Title 11, Section 761(j).

**28.** Title 11, Section 762(a).

such as parents, teachers, and coaches.[29] The statute also adds new levels of protection for victims under eighteen (18) years of age, where the defendant is thirty (30) years of age or older.[30]

Thus, the changes enacted on June 11, 1998 as set forth in 71 Del. Laws, C. 285, reflect certain clear legislative policies. Those policies raise the level of the crime as various victim-related aspects are factored in, such as (1) the nature of the act, be it a form of sexual penetration or intercourse, (2) the nature of the injury caused to the victim during the act, and (3) the nature of fear instilled in the victim during the act, such as where there was use of a deadly weapon. Furthermore, the statutes afford protection to the younger age victim. The present policy also factors in characteristics of the defendant, (1) such as where an older defendant is involved with a teenage victim, or (2) where a defendant in a position of trust is involved with a young victim. In this present legislative scheme, the adult defendant is almost always held to the same, or greater, accountability than the juvenile defendant.

In more closely examining the 1998 policies, we first look at each of the particular present day rape statutes. Although Rape in the First Degree solely speaks of levels involving sexual intercourse, all of the lesser levels of rape, i.e. Rape Second to Fourth, are broken down into general categories involving either sexual intercourse or sexual penetration.

Reviewing first the levels of sexual penetration of the present day rape statutes, we find that Rape in the Fourth Degree carries the identical level of charge, a Class C felony, whether there is sexual penetration without a victim's consent, or whether there is sexual penetration and the victim has not reached his or her sixteenth (16th) birthday.[31] It makes no difference whether the victim is a teenager or an adult.

Under Rape in the Third Degree, the same elements for sexual penetration as contained in the just noted Rape in the Fourth Degree are included together with the additional element of causing the victim physical injury or serious mental or emotional injury. Thus, an individual will be guilty of Rape in the Third Degree where he intentionally engages in sexual penetration with another person without the victim's consent and during the commission of the crime, or during the immediate flight from the crime, or during an attempt to prevent the reporting of the crime, the person causes physical injury or serious mental or emotional injury to the victim.[32] These same elements will result in the same charge where the victim has not reached his or her sixteenth (16th) birthday.[33]

This same pattern is carried to the next level of sexual penetration under Rape in the Second Degree. A person is guilty of Rape in the Second Degree where serious physical injury is caused to the victim who is sexually penetrated without their consent, or where serious physical injury is caused to the victim who is sexually penetrated and has not reached their sixteenth (16th) birthday.[34] Also, the display of a deadly weapon to either of these types of victims during an act of sexual pen-

**29.** Title 11, Section 761(*l*).

**30.** Title 11, Section 770(a)(2).

**31.** Title 11, Section 770(a)(3) a and b.

**32.** Title 11, Section 771(a)(2) a.

**33.** Title 11, Section 771(a)(2) b.

**34.** Title 11, Section 772(a)(2) a and c.

etration will result in Rape in the Second Degree.[35]

In each of the aforementioned scenarios involving sexual penetration, from Rape in the Fourth Degree through the increasing intensity of the charge for Rape in the Second Degree, a teenage defendant could be charged for the same type of unlawful sexual penetration as the adult defendant, and including the same level of additional aggravating circumstances ranging from no physical injury to physical injury, or to serious physical injury or appearance of a deadly weapon. The teenager is never treated more harshly than the adult in any of these scenarios. In fact, in the scenario of the sixteen (16) and under defendant, whereas the adult cannot argue that the sixteen (16) and under victim consented, the teenager can raise that defense pursuant to Title 11, Section 762(d). Furthermore, there is a clear legislative intent to punish even more harshly the individual who is held in a position of trust, authority or supervision when one considers that such an individual who sexually penetrates an under sixteen (16) year old victim, without having caused any serious physical injury, or even physical injury, and without having displayed what appeared to be a deadly weapon, is held to the accountability of the highest level of accountability for sexual penetration, being Rape in the Second Degree.[36]

Turning to a review of these same statutes where sexual intercourse, and not sexual penetration, is involved, we continue to see carried out the same previously enunciated legislative philosophies. Thus, Rape in the Fourth Degree is occasioned where one intentionally engages in sexual intercourse with another person and the victim has not reached his or her sixteenth (16th) birthday.[37] In this case, both the adult defendant and the teenage defendant are treated similarly, except the teenage defendant has the additional advantage of being able to raise the issue of consent pursuant to Title 11, Section 762(d).

When reviewing the sexual intercourse aspect of Rape in the Third Degree, the Legislative intent of protecting young victims against older defendants is clear. Thus, one is guilty of Rape in the Third Degree when one intentionally engages in sexual intercourse with a victim who has not reached his or her sixteenth (16th) birthday and the defendant is at least ten (10) years older than the victim, or the victim has not reached his or her fourteenth (14th) birthday, and the defendant has reached his or her nineteenth (19th) birthday.[38] Obviously, these charges do not apply to the teenage defendant.

The sexual intercourse aspect of Rape in the Second Degree only addresses non-consensual intercourse. The Court notes its initial perception that this is the only aspect of the overall present statutory scheme which, at first glance, does not increase the intensity of the charge with the level of conduct. Without further examination, it would seem to make more sense that the non-consensual intercourse as defined by Rape in the Second Degree, which requires no elements of aggravating circumstances, be placed at a lower level of charge than Rape in the Fourth Degree where the statute is involved with the unlawful sexual intercourse of an under sixteen (16) year old victim.

At this point, however, the Court must pause to examine more closely this apparent incongruity. In doing so, the Court

35. Title 11, Section 772(a)(2) d and e.

36. Title 11, Section 772(a)(2) h.

37. Title 11, Section 770(a)(1).

38. Title 11, Section 771(a)(1).

draws a comparison between the sexual intercourse language of Rape in the Fourth Degree and Rape in the Second Degree to the contact language in the Unlawful Sexual Contact Statutes Second and Third, respectively.

As just noted, the sexual intercourse of Rape in the Second Degree, a higher level charge than Rape in the Fourth Degree, proscribes intentional "sexual intercourse with another person, and the intercourse occurs without the victim's consent." [39] Compare this wording to the similar wording of Title 11, Section 767, Unlawful Sexual Contact in the Third Degree, which proscribes unlawful sexual contact which is either offensive to the victim or occurs without the victim's consent. Although the act itself differs, be it intercourse versus contact, the other elements are strikingly similar.

Now compare the unlawful sexual intercourse aspect of Rape in the Fourth Degree under Title 11, Section 770(a)(1) with Unlawful Sexual Contact in the Second Degree under Title 11, Section 768. Both of these statutes proscribe conduct, be it sexual intercourse or sexual contact, against victims less than sixteen (16) years of age.

The irony is that in the rape statutes, the greater penalties lie where there is sexual intercourse of a non-consenting victim as opposed to sexual intercourse with the under sixteen (16) year old victim, whereas the reverse is true when evaluating the unlawful sexual contact statutes. With the unlawful sexual contact statutes, the greater penalty lies with the situation where the victim is less than sixteen (16) years of age. By making non-consensual intercourse a higher level charge than intercourse with a victim less than sixteen

(16) years of age, the present laws are able to continue the policy of treating adults the same or stricter than teenagers. Likewise, the wording of the rape statutes avoids treating the teenager more harshly than the adult for committing identical conduct, irrespective of the victim's age. Thus, the present classification of non-consensual intercourse as Rape in the Second Degree makes sense within the overall criminal sex statute policies of our Legislature of not treating the teenage defendant more harshly than the adult defendant.

It must also be remembered that the original unlawful sexual contact statute, defined under the 1973 Delaware Code as sexual assault, placed all unlawful sex contact charges under one (1) statute, namely Title 11, Section 761. Under the 1985–86 revisions, the unlawful sexual contact statute was broken down from one (1) statute into the two (2) separate modern day Unlawful Sexual Contact statutes in the Second and Third degrees. Even under these modern statutes which briefly preceded the addition of the voluntary companion defense, followed by the latest revision to the teenage defendant defense,[40] a juvenile was treated the same as, but never more harshly than, the adult performing the same type of contact whether it was with any victim under Title 11, Section 767 or with a victim less than sixteen (16) years of age under Title 11, Section 768. This same treatment, before adding the "teenage defendant defense", would initially occur because a victim who was less than sixteen (16) years of age was unable to give consent, regardless of whether the defendant was an adult or a teenager. When the Legislature apparently realized that two (2) teenagers sharing some nature of sexual contact would both be guilty under Title 11, Section 768, since neither was

---

**39.** Title 11, Section 772(a)(1).

**40.** 71 Del. Laws 285 § 29(1998).

able to give consent, the Legislature quickly attempted to remedy the problem by defining the voluntary sexual companion defense, later followed by the passing of the teenage defendant defense as we know it today.[41]

Unfortunately, creating the present-day teenage defendant defense introduced the issue of consent back into the unlawful sexual contact statute where the victim is under sixteen (16). This consent issue, pursuant to Title 11, Section 762(d) is limited to a small group of defendants who are within four (4) years of age of the victim. Suddenly, for this small group of teenage defendants, they receive a harsher penalty than an adult defendant who did the same type of unlawful sexual contact, but against an adult victim.

Returning to the examination of the final rape statute, the charge of Rape in the First Degree also follows the general policy of placing the harsher penalties on adult defendants than on juvenile defendants, and also placing the harsher penalties when considering the age of the victim and the nature of harm caused to the victim. Thus, Rape in the First Degree, as set forth in Title 11, Section 773, and which only discusses acts of sexual intercourse, applies where the intercourse is accompanied by (1) physical injury or serious mental or emotional injury to the victim, or (2) sexual intercourse occurs during the commission of certain specified crimes or (3) if sexual intercourse occurs during the display of a deadly weapon, or (4) if the victim is under twelve (12) and the defendant is eighteen (18) or older, or (5) if the victim is under sixteen (16) and the defendants stands in a position of trust.

As can be seen, all of the present day rape statutes place emphasis on protecting the young victim, they place emphasis on

analyzing the nature of the injuries suffered by the victim or whether the defendant displayed a deadly weapon during the crime, and these statutes also place special significance on making more accountable the adult defendant or the defendant who holds a position of trust. In none of these rape statute scenarios, regardless of the age of the victim, does the present statutory scheme hold the juvenile defendant more accountable than the adult defendant.

But under the present unlawful sexual contact statutes, a juvenile defendant can be held more accountable than the adult defendant. It is only in the case of the unlawful sexual contact statutes of Title 11, Section 767 and Title 11, Section 768 that a teenage defendant, if adjudicated delinquent because there was no consent, can be held more accountable than an adult defendant who committed the same type of unlawful sexual contact, disregarding the age of the victim.

The State's argument in the present case is that the unlawful sexual contact statute of Title 11, Section 768 focuses solely on protecting the victim under sixteen (16) years of age, and that alone justifies the higher level charge of a felony for violation of Title 11, Section 768, rather than the misdemeanor charge of Title 11, Section 767. Focusing solely on Title 11, Section 768, the State notes that both the juvenile who victimizes the under sixteen (16) year old and the adult who victimizes the under sixteen (16) year old are treated the same. Likewise, if we focus solely on Title 11, Section 767, both the teenage defendant and the adult defendant will be treated alike. But when one expands the focus beyond the single statutes to the entire statutory scheme of all the sex statutes, it can be argued that Title 11, Sec-

41. *Id.*

tions 767 and 768 are inconsistent with the general scheme and policies of the other sex-related statutes concerning rape from Title 11, Sections 770–773, where, under these several rape statutes, a juvenile is never treated more harshly than an adult for the same type of conduct, irrespective of the age of the victim.

It would be easy to justify charging a teenage defendant under Title 11, Section 768 with a higher level offense than Title 11, Section 767 under the guise solely of protecting victims under the age of sixteen (16). However, given the foregoing analysis of the present legislative scheme, and also noting that the unlawful sexual contact statutes are, in some part, a carryover from the 1971–72 legislation, which made allowances for the immaturity and vulnerability of teenage defendants, following a limited one-statute focus is not as simple as the State would suggest.

### CONSEQUENCES OF LEVEL OF CHARGE

The original attorney for the defense expressed grave concerns about the collateral consequences that a felony-associated delinquency would have for the defendant. As has been noted previously, a conviction or finding of delinquency under Title 11, Section 767, Unlawful Sexual Contact in the Third Degree is a Class A misdemeanor. A conviction or finding of delinquency

under Title 11, Section 768, where the victim is less than sixteen (16) years of age, is a Class G felony. For an adult, conviction of a Class G felony carries a sentence up to two (2) years to be served at Level V.[42] Sentence for a Class A misdemeanor as an adult may include up to one (1) year incarceration at Level V and such fines up to $2,300, restitution or other conditions as the Court deems appropriate. Level V placement is a sentence consisting of the commitment of the offender to the Department of Corrections for a period of incarceration.[43] Under Title 11, Section 4201(c), violation of Title 11, Section 768, involving the under sixteen (16) defendant, is designated as a violent felony, whereas violation of Title 11, Section 767 is not. Thus, the adult defendant who has unlawful sexual contact with a victim less than sixteen (16) years of age faces a harsher sentence than the same adult defendant who has unlawful sexual contact with another adult. Our Delaware Legislature has always followed this sound logic.

A child who commits an act, which if committed by an adult would constitute a crime, is defined as a "delinquent child".[44] The juvenile is then dealt with civilly rather than criminally, except for some very serious crimes and most motor vehicle violations, where the matter is referred to Superior Court and the juvenile is tried as an adult.[45] The present charge is not the

42. Tit. 11, § 4205(b)(7).

43. Tit. 11, § 4204(c)(5).

44. Del.Code Ann. tit. 10, § 901(7)(1999).

45. Tit. 10, § 921(1)(2) which state the following:
   The [Family] Court shall have exclusive original civil jurisdiction in all proceedings in this State concerning:
   (1) Any child found in the State who is alleged to be dependent, neglected, or delinquent except as otherwise provided in this chapter;

(2)(a) Any child charged in this State with delinquency by having subdivision thereof, except murder in the first or second degree, rape in the first degree, rape in the second degree, unlawful sexual intercourse in the first degree, kidnapping in the first degree, or any attempt to commit said crimes; any child 16 years of age or older charged with violation of Title 21, except as provided in paragraph (16) of this Section or Section 927 of this Title; or any other crime over which the General Assembly has granted or may grant jurisdiction to another court.

type of charge that would be sent on to the Superior Court. Thus, in the present case, whether the juvenile is charged with violation of Title 11, Section 768 (the under sixteen [16] victim) or Title 11, Section 767, the juvenile is tried civilly in the Family Court, and if found guilty, is determined to be a juvenile delinquent. In fact, 10 *Del. C.* Section 1002 clearly states, except for certain serious enumerated crimes or a finding that the child is non-amenable to the rehabilitative process available to the Family Court, no child shall be deemed a criminal. More importantly, 10 *Del. C.* Section 1002 goes on to state *"in the [Family] Court the nature of the hearing and all other proceedings shall be* in the interest of rather than against *the child."* (Emphasis added.) [46]

Jurisdiction in the Family Court over the juvenile generally extends until age eighteen (18), although it can be extended in certain situations until the juvenile reaches age twenty-one (21). [47] Furthermore, a juvenile may, at the Court's discretion, eventually have his or her record expunged if three (3) years have elapsed since the date of the delinquency adjudica-

tion, and no subsequent adjudication has been entered against the child. [48] This can occur earlier than the three (3) year period, if the child demonstrates an intention to enlist in a branch of the armed forces of the United States. [49] Thus, based upon the foregoing, it can be argued that a juvenile, whether arrested under Title 11, Section 767 or Title 11, Section 768 (the under sixteen [16] year old victim), can theoretically get the same rehabilitative treatment for either offense in the Family Court. In either case, there is a civil commitment where the juvenile is assigned such rehabilitative treatment as is hoped will be in the child's best interests. Furthermore, assuming three (3) years have elapsed since the date of the finding of juvenile delinquency, the child may also get his or her record expunged where the child has had no subsequent adjudication entered against the child. Although the possibility of expungement certainly lies for a Section 767 misdemeanor-related adjudication, it is not as clear, given the discussion which follows, whether the Section 768 felony-related adjudication, along with its collateral consequences, can be expunged after three (3) years.

(b) Any child charged in this State with delinquency by having committed, after reaching his or her 16th birthday, murder in the second degree, manslaughter, robbery in the first or second, attempted murder (first or second degree), burglary in the first degree or arson in the first degree; provided, however, that such child shall, after his first appearance in the Court, be given a hearing as soon as practicable to determine his amenability to the processes of the Court. The Court shall give immediate notice of such hearing in writing to the Department of Justice and to the child's custodian, near relative, attorney or other interested person, if known, and then the Court shall proceed in accordance with the provisions of Section 1010 of this Title. The Attorney General or one of his or her deputies shall be present at any such hearing.

Superior Court shall retain jurisdiction for purposes of sentencing and all other post-conviction proceedings if any judge or jury shall find the child guilty of a lesser included crime following a trial or plea of guilty in any prosecution for 1 of the crimes specifically defined in this Subsection or for any crime where the child has been transferred to the Superior Court by the Family Court pursuant to Section 1010 of this Title.

**46.** Tit. 10, § 1010(a)(1)(2) *"No child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency, nor shall the child be charged with or prosecuted for a crime in any other court."*

**47.** Tit. 10, § 928.

**48.** Tit. 10, § 1001(a).

**49.** *Id.*

There are other consequences, depending upon the nature of the charge, which are treated quite differently for the juvenile defendant, and which can make a lasting difference. Thus, a juvenile who has been adjudicated a delinquent for conduct which, if committed by an adult, would constitute a felony, is prohibited from purchasing, owning, possessing or controlling a deadly weapon or ammunition for a firearm within the State of Delaware until reaching their twenty-fifth (25th) birthday.[50] Although the teenage defendant will be thus penalized if found delinquent of Title 11, Section 768, the adult defendant who violates Title 11, Section 767 for similar unlawful sexual contact, but with an adult victim, will not be similarly penalized. The statute prohibiting firearms was passed in 1994.

In neither of the above scenarios has the defendant, juvenile or adult, displayed what appeared to be a deadly weapon. Had either done so, the charge would have been under Title 11, Section 769, which is Unlawful Sexual Contact in the First Degree, a Class F felony. Section 769 specifically includes the element that the victim has suffered physical injury or the defendant has displayed what appears to be a deadly weapon or dangerous instrument. Also interesting under Title 11, Section 769, there is no distinction made on the charge between the victim being an adult or being under sixteen (16). The defendant, adult or juvenile, is charged the same.

Another serious and lasting consequence which depends upon the level of the charge is caused by the Registration of Sexual Offenders Statute set forth in Title 11, Section 4120, commonly known as Megan's Law. The law became effective in Delaware on March 1, 1999. Conviction under Title 11, Section 768, involving the under sixteen (16) year old victim, is a Class G felony. It is characterized as a violent felony pursuant to Title 11, Section 4201(c). Conviction of an adult or a finding of juvenile delinquency as to a child under Section 768 for either defendant requires a sex registration designation of risk assessment Tier 11.[51] Violation of Title 11, Section 767, on the other hand, is a Class A misdemeanor. Violation of Title 11, Section 767 requires the lower sex registration designation of risk assessment at Tier I.[52] The individual who is convicted of the misdemeanor and assigned a risk assessment Tier I may petition the Court for relief from the Tier 1 designation because it was a misdemeanor; whereas, the individual convicted of violation of Title 11, Section 768, involving the under sixteen (16) year old victim, may not seek such relief from the Tier II designation.[53]

Restricted solely to the situation where the person was convicted of a misdemeanor, the statute goes on to note that the defendant will not be allowed relief from the designation as a Tier I sex offender if the victim was less than eighteen (18) years of age, unless the defendant was also less than eighteen (18) years of age.[54] Certainly, it makes sense that the adult defendant charged with the unlawful sexual contact of a seventeen (17) year old, resulting in the Class A misdemeanor pursuant to Title 11, Section 767, not be allowed to be relieved from the Tier I requirement. It further makes sense that the sixteen (16) year old defendant charged with having unlawful sexual con-

**50.** Tit. 11, § 1448(a)(4).

**51.** Tit. 11, § 4121(e)(2).

**52.** Tit. 11, § 4121(e)(3).

**53.** Tit. 11, § 4121(e)(6).

**54.** *Id.*

tact with the seventeen (17) year old victim be given a reprieve from the sex registration statute where Title 11, Section 4121(e)(6) indicates the Legislature's philosophy that this under eighteen (18) age group should not be held to the same standard of accountability as an adult. However, this particular provision contained in Title 11, Section 4121(e)(6), which gives relief from registration to the under eighteen (18) year old defendant where the victim was under eighteen (18), does not apply to the fifteen (15) year old defendant who had unlawful sexual contact with a fifteen (15) year old victim. The reason the eighteen (18) and under reprieve gets cut short for this particular fifteen (15) year old in the under sixteen (16) year old victim situation, is that the offense comes under Title 11, Section 768, which is a Class G felony, which requires a Tier II sex offender registration. No relief is allowed from a Tier II designation.[55] Thus, pursuant to Title 11, Section 4121(e)(6), we see the legislative philosophy that juvenile defendants should be held less accountable than adults. However, the repercussions of the felony status of Title 11, Section 768 cut short the reality of that well-intended legislative reprieve.

Whether the defendant is assigned a risk assessment Tier I or II, the defendant is required to register as a sex offender for fifteen (15) years.[56] Keep in mind, again, that the Tier I offender, with certain exceptions just noted, may seek relief from that designation and, therefore, not be required to register at all. The only relief that an offender designated to risk assessment Tier II may receive, is that the offender may petition the Superior Court for redesignation to risk assessment Tier I in certain circumstances after ten (10) years have elapsed.[57]

The Delaware Registration of Sexual Offender statute also carries with it certain notification provisions which are set forth in Title 11, Section 4121. This includes *"community notification which is limited to providing notice to those members of the public who are likely to encounter the convicted sex offender."* A broader area of publication is required for defendants who are designated to risk assessment Tier II or III, which includes *"searchable records available to the public."* These records can include the posting of a defendant's photograph and identifying information on the Internet. Thus, the fifteen (15) year old defendant who has unlawful sexual contact with an under sixteen (16) year old victim will have his or her photograph placed on the Internet for a period of fifteen (15) years. This fifteen (15) year old defendant is treated identically to an adult who has unlawful sexual contact with an under sixteen (16) year old victim. But the teenager is also treated more harshly than the adult who has unlawful sexual contact with an adult victim.

Compare the foregoing situation to the scenario where the fifteen (15) year old defendant has unlawful sexual contact with a seventeen (17) year old victim. This fifteen (15) year old would be classified a juvenile delinquent because he committed a crime which, had he been an adult, would be characterized as a misdemeanor. Because the victim is under eighteen (18), and because the classification of the charge was a misdemeanor, the fifteen (15) year old defendant will be set at a Tier I sex offender status. This will require "com-

---

**55.** There is one (1) exception where a Tier II designation may be lowered to a Tier I designation, but this is only where the State and the defendant agree to a waiver pursuant to Title 11, Section 4121(p).

**56.** Tit. 11, § 4121(f)(1)b.

**57.** Tit. 11, § 4121(f)(2)b.

munity notification", but not the greater level of "searchable records available to the public". As such, the teenager in this situation will not be required to have his or her name and photograph placed on the Internet. There is also the possibility that the fifteen (15) year old in this situation will be able to be relieved from any tier level designation.[58]

Next, contrast the two (2) foregoing scenarios with the situation where an adult has unlawful sexual contact with a victim who is under sixteen (16) years of age. That adult will have the same serious consequences as the teenager of the felony-level offense, Tier II registration, and will include the broad spectrum of posting information on searchable records available to the public, including the Internet. Certainly, for this adult defendant, such punishment and broad public notification is appropriate. The same adult who has unlawful sexual contact with a seventeen (17) year old will be guilty of a misdemeanor. As such, the adult will assigned a Tier I level of assessment. Because the victim was under eighteen (18), the adult will not be permitted to remove the Tier I assessment. This adult, in the latter situation of the seventeen (17) year old victim, however, will avoid the broad publication of his or her photograph on the Internet.

In a final scenario, consider the adult who has unlawful sexual contact with another adult. Such an adult will be found guilty of a misdemeanor, assessed a Tier I registration, which will carry with it notification which will not include the Internet, and which may also be avoided completely if the adult receives relief from the Tier I designation pursuant to Title 11, Section 4121(e)(6).

Having reviewed the various particulars of the Delaware Sex Registration and No-tification Statute, and also the above scenarios, consider the questions that must occur to our youth. With the finding of delinquency under Title 11, Section 768, a felony level offense with Tier II sex registration consequences, will that juvenile be able to have his or her Family Court record expunged after three (3) years have elapsed and the juvenile has had no other adjudications? Furthermore, will the juvenile's photograph be taken off the Internet in the event the Court allows the juvenile to expunge the record? The Court is not required to answer these questions in this opinion. Furthermore, the Court questions whether the youth will be able to reconcile why the youth's photograph was posted on the Internet for fifteen (15) years for a certain type of conduct, whereas an adult, who the youth knows did the same type of conduct, but with an adult victim, is not required to have his or her photograph posted on the Internet.

### *PURPOSE OF THE FAMILY COURT*

The purpose of the Family Court goes back to 1953, where, in 58 Del. Laws, 114, Section 1 (1971), the legislature stated the following:

> *Section 902. Purpose; construction.*
>
> *(a) In the firm belief that compliance with the law by the individual and preservation of the family as a unit are fundamental to the maintenance of a stable, democratic society, the General Assembly intends by enactment of this chapter that 1 court shall have original statewide civil and criminal jurisdiction over family and child matters and offenses as set forth herein. The court shall endeavor to provide for each person coming under its jurisdiction such control, care, and treatment as will best serve the*

---

58. Tit. 11, § 4121(e)(6).

*interests of the public, the family, and the offender, to the end that the home will, if possible, remain unbroken and the family members will recognize and discharge their legal and moral responsibilities to the public and to one another.*

*(b) This chapter shall be liberally construed that these purposes may be realized. (Del.Code Ann., tit. 10, § 902 (1953); 58 Del. Laws 114 (1971)).*

The Family Court Act of 1971 brought uniformity in jurisdiction, policies, practices and procedures by creating a state-wide Family Court system.[59] Thus, the role of the Delaware Family Court has been to preserve families, if possible, and to provide for their orderly break up and dissolution, if required; and to deal with criminal-like matters between family members and also involving children. Of paramount concern has been the best interest of the children. In fact, 10 *Del. C.* Section 902 specifically contemplates the juvenile criminal defendant when it states that the Court shall *"endeavor to provide ... such control, care, and treatment as will best serve the interests of ... the offender ..."* (Emphasis added). As previously noted, 10 *Del. C.* Section 1002 specifies that a delinquent child shall not be deemed a criminal; instead, the proceedings shall be *"... in the interest of rather than against the child."* Our Delaware Supreme Court has affirmed this position in the case of *State v. J.K.*[60] In that case, Justice Duffy, speaking for the Court, stated that it was the duty of the Family Court to proceed in the child's interest and the public's interest unless there was a determination that the child was not amendable to the Court's

rehabilitative processes. Justice Duffy went on to say that "... *rehabilitation, particularly as to youthful offenders, is a compelling state interest."* [61]

Again in 1994, our Delaware Supreme Court, speaking through Justice Walsh in the case of *Hughes v. State,* [62] emphasized that the adjudication of delinquency in Family Court is a civil proceeding, that there is a legislative intent to treat child offenders differently from adult offenders, and that rehabilitation is an important and appropriate purpose of the Court. In the *Hughes* case, the Court found that a statutory amendment which eliminated judicial investigation into the factual basis of the felony charge as it considered the amenability statute, violated the child's constitutional guarantees of due process and equal protection.

The *Hughes* decision, *supra,* goes on to note, at 250, some of the advantages a child receives in the Family Court which include being treated in his own best interest, Title 10, Section 902(a) and Title 10, Section 1002; privacy, but only if the proceedings classify the crime as a misdemeanor, Title 10, Section 1063; the ability to have the delinquency adjudication expunged and arrest records destroyed, Title 10, Section 1001; and, as the *Hughes* court indicated *"Most importantly, the child is never designated a criminal."*

The *Hughes* Court went on to note that the independent judicial review to assess the basis for prosecuting a child as an adult is necessary, and that, *"the good faith of the charging authority in its decision to charge a child with a felony is not*

---

59. *Wife. S. v. Husband, S.,* 295 A.2d 768, (Del.Ch.1972).

60. *State v. J.K.,* 383 A.2d 283, 287 (Del.1977).

61. *Id.* at 289.

62. *Hughes,* 653 A.2d 241.

*sufficient to protect the child's constitutional rights."* [63]

This Court is not unmindful of the practice of prosecutors in plea negotiating of offering a defendant a plea to a lesser included offense so that the defendant will receive a lesser classification and/or punishment. For an adult male who performs a specific act of unlawful sexual contact against an adult female, there is no lesser included offense. However, for the teenage defendant who is within four (4) years of age of a victim who is under sixteen (16), the prosecutor has the additional leverage of coercing the child defendant into accepting a plea to the misdemeanor of Title 11, Section 767. This is despite the reality, that in both situations, given the teenage defendant affirmative defense of raising the victim's consent, both cases can involve the identical conduct. And yet, in the teenager's case, the prosecution has additional leverage in its plea negotiation, and this can also include the removal of the child's right to be tried in privacy under 10 *Del. C.* Section 1063.[64] Of course, the State can argue that, looking at each statute by itself, both a juvenile defendant and an adult defendant who victimize the under sixteen (16) year old victim can each be offered a plea to the lesser charge of Title 11, Section 767. But, in reality, for the adult defendant the statutes are dramatically different—one disallows consent, and the other makes consent an issue. For the teenage defendant, however, the consent issue is present in both statutes, as a result of the teenage defendant defense under Title 11, Section 762(d).

Another example of our Delaware Supreme Court recognizing that juvenile offenses are to be treated differently than adult offenses, is found in the case of *Fletcher v. State*, 409 A.2d 1254 (Del.1979). Justice McNeilly, speaking for the Court, noted that it was improper to use convictions from other jurisdictions that would have been juvenile offenses in Delaware, and thus not felonies, to support enhanced punishment as a habitual offender.

Clearly, the intent of the Delaware Legislature, as well as the Delaware Courts, has always been to treat juvenile offenders in a different, and certainly never a harsher, manner than adult offenders, and to stress the importance of making every effort to rehabilitate the juvenile offender, except in the extreme cases where the juvenile offender has demonstrated that he or she is not amenable to the Family Court's rehabilitative processes.

### *LAW AND REASONING*

The Supreme Court of the State of Delaware, through Justice Walsh, recently rendered an opinion on November 7, 2001 in the case of *Helman v. State of Delaware.*[65] The *Helman* decision upheld the constitutionality of Delaware's sex offender registration statute as it applies to juveniles. Justice Walsh's opinion, rendered on behalf of the Court, reminds us, at 11, of the presumption of constitutionality to be given acts of the General Assembly, the measure of self-restraint imposed upon Courts sitting in review of claims of unconstitutionality, the deference to be given to legislative judgment in matters *"fairly debatable"*, and that Courts are not super legislatures, and that it is not a proper judicial function to decide what is or is not

---

**63.** *Id.* at 250.

**64.** Pursuant to title 10, section 1065(a) of the Delaware Code, provides, in relevant part, "A proceedings before the [Family] Court and all records of such proceedings may be private

... provided, however, that proceedings in a crime classified as a felony shall be open to the public."

**65.** *Helman v. State,* 784 A.2d 1058 (Del.2001).

wise legislative policy.[66] At the same time, in another Supreme Court opinion, also written by Justice Walsh, in the case of *Hughes v. State*, 653 A.2d 241 (Del.1994), Justice Walsh noted, at 253, that the Court's role "... *is limited to a review for constitutionality, i.e., does a particular statute contravene the rights or impair the guarantees which the federal and Delaware constitutions have established as bedrock principles limiting governmental power? Opinion of the Justices, Del. Supr., 385 A.2d 695 (1978). Where such departures are found to exist, it is the right, indeed the duty, of the judiciary to require conformity with the constitutional standards.*"

In the *Hughes* case, *supra*, at 243 and 248, Justice Walsh noted that equal protection is solely mentioned and guaranteed under the Federal Constitution, and due process of law is guaranteed under both the Federal and Delaware constitutions. U.S. Const. amend. 14; Del. Const. art. I Section 7. Justice Walsh went on to note that the General Assembly is endowed with broad authority, but that authority is not without constitutional limits. As indicated by Justice Walsh, *"The legislative scheme must bear some rational relationship to the purpose for which it was enacted."* [67] Further elaborating on the definition of equal protection, Justice Walsh wrote in the *Hughes* case, *supra*, at 248, *"Equal protection does not require identical treatment for all individuals within a class, but, rather, when distinctive treatment for individual class members does occur, there must be a reasonable basis for the distinction. [Marine v. State] Marine I, 607 A.2d at 1207*; *Mills v. State, 256*

A.2d 752, 756 (Del.1969). *For the distinction to be so unreasonable as to be discriminatory and unconstitutional, the distinction must be 'patently arbitrary and bear no rational relationship to a legitimate government interest.' Gotleib v. State, 406 A.2d 270, 275 (Del.1979); Marine I, 607 A.2d at 1207. Similarly, due process also requires that a statutory provision be rationally related to its purpose. State v. Hobson, 46 Del. 381, 83 A.2d 846, 847 (Del.1951).*" [68]

Pause should be taken to note the general form of an equal protection analysis under a traditional approach. The United States Supreme Court has held that certain categories are "inherently suspect", such as classifications based upon race, (*Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967)); alienage (*Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971)); national origin (*Oyama v. California*, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948)); or sex (*Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973)). In such cases, the Court will review the legislation with close scrutiny, and the legislation will carry a heavy burden of justification. These "inherently suspect" classifications will be sustained only if justified by compelling state interests. *M. v. M.*, 321 A.2d 115 (Del.1974). "Age" is not a suspect class subject to the strict scrutiny analysis. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

In addition to the "inherently suspect" classifications, strict scrutiny analysis is also followed where the statute affects a

---

**66.** *Id.* at 1058, citing *New Castle County Council v. State*, 688 A.2d 888, 891 (Del. 1996); *Wilmington Medical Center, Inc. v. Bradford*, 382 A.2d 1338, 1342 (Del., 1978); *Konstantopoulos v. Westvaco Corp.*, 690 A.2d 936, 940 (Del.1996).

**67.** *Id.*

**68.** *Id.* at 248.

fundamental right. Fundamental rights include the right to associate with family members,[69] the right to live with relatives,[70] and the right of a parent to educate their children as the parent chooses.[71] In 1976, in the case of *People v. Olivas*, the California Supreme Court held that "personal liberty" is a fundamental interest protected by both state and federal constitutions, and where a defendant's personal liberty was in question, the strict scrutiny standard was applicable in determining whether his right of equal protection had been violated.[72] In that case, the California Supreme Court determined that the State of California had failed to show a compelling state interest for legislation under which a juvenile could be committed to youth authority for a term potentially longer than a maximum jail term which might be imposed for the same conduct if committed by an adult. In the *Olivas* decision, the California Supreme Court recognized a truism which should be apparent to all Legislatures and to all Courts, that being *"the great value in the treatment of youthful offenders lies in its timeliness in striking at the roots of recidivism. Reaching the offender during his formative years, it can be an impressive bulwark against the confirmed criminality that defies rehabilitation, for it is characteristic of youth to be responsive to good influence as it is susceptible to bad."*[73] In making those comments, the California Supreme Court noted an earlier phrase coined in 1943 by Justice Traynor in the case of *Ex parte Herrera*, 23 Cal.2d 206, 143 P.2d 345 (1943), about the "malleability of youth". The California Court held in *Olivas* that

allowing a longer confinement of the youth than the adult because of the rehabilitative benefits, although justifiable in themselves, could not overlook that restraint of a youthful offender, no matter what form it takes, presents a control and limitation over ones freedom. As such, the California Court held that young people should *"not be subject to more onerous sentences because of their immaturity."* *People v. Olivas*, 17 Cal.3d 236, 131 Cal.Rptr. 55, 551 P.2d 375 at 387 (1976).

The New Mexico Court of Appeals, in the case of *State v. Owens*, 103 N.M. 121, 703 P.2d 898, 901 (Ct.App., 1984), stated that *"statutes which permit the state to subject one person to the possibility of greater punishment than another who has committed an identical act violate the equal protection clauses of the state and federal constitutions."* Citing *State v. Chavez*, 77 N.M. 79, 419 P.2d 456 (Ct.App., 1966).

Where a statute does not involve one of the "inherently suspect" classifications, or a fundamental right, the burden shifts so that a classification will be upheld if it is demonstrated that it is rationally related to a legitimate government interest. This premise was noted by Justice Walsh in the *Helman* decision, *supra* at 1074, where Justice Walsh added that the defendant has a heavy burden of showing a lack of rational justification for the classification created by the statute.

This Court does not address the constitutionality of Delaware's Sex Offender Registration Statute as it applies to juve-

**69.** *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462(1984).

**70.** *Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531(1977).

**71.** *Pierce v. Society of the Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070(1925).

**72.** *People v. Olivas*, 17 Cal.3d 236, 131 Cal. Rptr. 55, 551 P.2d 375 (Ca.1976).

**73.** *Id.* at 385, citing *In re Herrera*, 23 Cal.2d 206, 143 P.2d 345, 348 (1943).

niles. Indeed, the Delaware Supreme Court, as recently as November 7, 2001, upheld the constitutionality of that statute.[74] The Court found that there is a rational basis in the statute to protect the public from the danger and propensity for recidivism of convicted sex offenders. In making that determination, the Supreme Court noted, *"Studies indicate that sex offenders, particularly those who target children, are likely to offend again."* [75] Furthermore, the Supreme Court in *Helman* determined that the notification statute does not constitute punishment; *"rather, the statute is designed to respectively safeguard members of the community by informing them that a convicted sex offender is living among them."* The Supreme Court in *Helman* concluded that the guidelines of the sex offender registration and notification statute *"offends neither the State or Federal Constitution generally or as applied to juveniles"* and involved policies *"best left to the legislature".*

The Delaware Supreme Court in *Helman* also addressed the very recent decision of the Supreme Court of New Jersey *In The Matter of Registrant J.G.*, decided July 17, 2001.[76] First recall that New Jersey was the state of the original Megan's Law.[77] In its most recent decision, the New Jersey Supreme Court struggled with reconciling the importance of the policies of the juvenile Court concerning rehabilitation and limited duration of records as opposed to the lengthy, and possible lifetime, registration requirements of New Jersey's Megan's Law. In the view of the

New Jersey Court, *"In many instances, sexually improper behavior by such young children is more a reflection of inadequate adult supervision, immaturity, inappropriate media exposure, or a prior history of emotional abuse than it is of irremediable sexually predatory inclinations."* [78] New Jersey's solution, in harmonizing the Legislature's sex registration directive with the subsequently stated rehabilitation and limited duration policies of the juvenile court, was to limit the Megan's Law application to a juvenile until they are eighteen (18). In *Helman*, our Delaware Supreme Court distinguished the position taken by the New Jersey Court noting that Delaware's Legislature passed Delaware's Megan's Law well after the Family Court purposes of rehabilitation and expungement of records were firmly entrenched. Thus, the Delaware Supreme Court opined that the Delaware Legislature would have known of these important traditions of our juvenile system when enacting the sex registration and notification laws that would extend consequences for the juvenile beyond the juvenile's minority.[79] Whether an adjudication of juvenile delinquency for felony level unlawful sexual contact pursuant to Title 11, Section 768 can be expunged remains to be seen. If it can be expunged, it further remains to be seen whether the requirement of sex registration and notification can be removed.

The Delaware Legislature is obviously aware of the many questions that have arisen concerning this relatively new area of law concerning sex offender registration

---

74. *Helman,* 784 A.2d 1058.

75. *Id.* at 1075.

76. *In the Matter of Registrant J.G.,* 169 N.J. 304, 777 A.2d 891 (2001).

77. Megan's Law was named after Megan Kantra, a seven (7) year old who was kid-

napped and murdered by a twice-convicted adult child molester in her New Jersey neighborhood.

78. *In the Matter of Registrant J.G.,* 169 N.J. 304, 777 A.2d 891, 913–914.

79. *Helman, supra,* at 1078–1079.

and notification statutes. In the *Helman* case, the Delaware Supreme Court found the Sex Offender Registration Notification Statute to be rationally related to the legitimate government interest of protecting the public from the danger and propensity for recidivism of convicted sex offenders. The decision noted that *"Studies indicate that sex offenders, particularly those who target children, are likely to offend again."* [80] Certainly, the Legislature is mindful of their need to keep current with future studies which will hopefully demonstrate whether juvenile sex offenders should be treated similar to or different from adult sex offenders,[81] and how the recidivism rates of juvenile sex offenders compare to the recidivism rates of adult sex offenders.[82] Hopefully, future studies will demonstrate if the adult offender is more psychopathic and predatory than the juvenile offender, who some would suggest is more likely to be driven by opportunity, knowledge and association with the victim,

and injurious family forces.[83] Perhaps studies will answer whether or not the juvenile offender is more susceptible to treatment than the adult offender.[84] Future studies may reflect how effective the sex registration and notification statutes are in preventing a juvenile from causing another juvenile to be a victim. Also, and very important, it is hoped that future studies will determine whether labeling a juvenile a sex offender will deter the juvenile's success in rehabilitation.[85] Finally, close watch must be kept to determine whether notification statutes divert the juvenile sex offender from getting treatment because of the reluctance of social workers, family members and law enforcement personnel to report and prosecute the crimes due to their perception of the significant repercussions to the young offender caused by the registration and notification statutes.[86]

One Court has already voiced an opinion of its concern that sex offender registra-

80. *Id.* at 1075.

81. *See, e.g.* Sue Righthand, Ph.D., and Carlann Welch, Psy.D., *Juveniles Who Have Sexually Offended,* a report prepared by the Office of Juvenile Justice and Delinquency Prevention for the U.S. Department of Justice (March 2001), at 2 and 57, wherein it is suggested that studies have shown that juvenile sex offenders are different than adult sex offenders.

82. *Id.,* at 30 and 31, (suggesting that once a juvenile's sex offending has been officially recognized, subsequent detected sexual recidivism is relatively infrequent. Also, stating that some studies to date reflect that very few who commit sex offenses as juveniles go on to commit such offenses as young adults).

83. *See, e.g.* Gail Ryan, *Similarities and Differences of Sexually Abusive Adults and Juveniles,* Interchange, a cooperative newsletter of the National Adolescent Perpetration Network published by the Kemp Children's Center of the University of Colorado Health Science Center (September 1997); Mark Chaffin, Ph.D. and Barbara Bonner, Ph.D., *"Don't*

*Shoot, We're Your Children": Have We Gone Too Far in Our Response to Adolescent Sexual Abusers and Children with Sexual Behavior Problems?,* Child Maltreatment, Vol. 3, No. 4 (November 1998) 314–316.

84. *Id.*

85. *Id.;* See also, *Juveniles Who Have Sexually Offended,* supra., at 57; William D. Pithers and Alison Gray, *The Other Half of the Story–Children With Sexual Behavior Problems,* Psychology, Public Policy, and Law (March–June 1998) Vol. 4, No. 1–2, 200–217.

See also, *John Doe v. Christine O. Gregoire,* 960 F.Supp. 1478, at 1485 and 1486 (W.D. Wash., Seattle Div.1997), wherein the Court expressed the concern that the particular notification statutes involved in the State of Washington make rehabilitation more difficult.

86. *See, e.g.* Robert E. Freeman–Longo, MRC, LDC, *Revisiting Megan's Law and Sex Offender Registration: Prevention or Problem,* Internet site http://www.saperi.com.

tion will actually deter a juvenile's success in rehabilitation.[87]  If studies prove that to be so, sex registration of juveniles may be more harmful than helpful to protecting victims.  And if the knowledge of the consequences of sex registration and notification statutes will deter victims, who may be family members or close friends, from reporting these incidences, or keep social workers and prosecutors from pursuing these matters, we will be missing the opportunity to rehabilitate these young defendants when they can be rehabilitated, thus leaving their victims, and other victims, more prone to future and, perhaps, greater injury.

In support of its position, the State cites the case of *Abrams v. State of Delaware*, 689 A.2d 1185 (Del.1997).  There, the Supreme Court upheld a statute [88] classifying theft as a felony where the victim is sixty (60) years of age or older, and theft as a misdemeanor when the victim is less than sixty (60) years of age.  The Court said this distinction in the age of the victim does not violate the Equal Protection clause of the Fourteenth (14th) Amendment to the Constitution of the United States.  The rational basis for upholding the statute was to protect the elderly. The State argues that the statute upheld in the *Abrams* case which seeks the protection of elderly individuals is identical to the statute in this case, Title 11, Section 768, which seeks the protection against unlawful sexual contact of victims under sixteen (16) years of age.  But there is a difference.  The simple policy in the elder-

ly victim statute is for the protection of the frail and feeble.  The policy considerations in weighing the best interests for our youth, victims and defendants alike, are much more complicated.[89]

Also supporting the State's case is the case of *Modi v. State of Delaware*,[90] where the Superior Court of the State of Delaware determined that it was not necessary to advise a defendant, who was entering a plea of guilty to Unlawful Sexual Penetration in the Second Degree, that he would be required to register as a sex offender.  The Court found that the registration and community notification requirements were collateral consequences of the guilty plea, and the Court was not required to inform the defendant of the collateral consequences because the registration was not considered a punishment under the plea.  Although the Courts do not require disclosure of the registration and notification statutes when a sex offender is making a plea, such a registration will clearly have an effect upon the future of a juvenile adjudicated under Title 11, Section 768, where the juvenile's photograph appears on the Internet for the next fifteen (15) years.  In the *Helman* case, our Delaware Supreme Court rejected the argument that sex registration and notification of a juvenile would automatically brand the juvenile for the rest of his or her life, subjecting the juvenile to lost employment opportunities, lessened abilities to form relationships, and community repro-

---

**87.**  *John Doe v. Christine O. Gregoire,* 960 F.Supp. 1478, at 1485 and 1486 (W.D.Wash., Seattle Div.1997); See also, *Juveniles Who Have Sexually Offended,* supra., at 57;  William D. Pithers and Alison Gray, *The Other Half of the Story–Children With Sexual Behavior Problems,* Psychology, Public Policy, and Law (March–June 1998) Vol. 4, No. 1–2, 200–217.

**88.**  Tit. 11, § 811(c).

**89.**  In the *Abrams* case, *supra,* the Court, through *dicta,* addressed briefly an age determination in the former Title 11, Section 773 involving unlawful sexual intercourse.

**90.**  *Modi v. State,* 1999 WL 167835 (Del.Super.), aff'd.  744 A.2d 988 (Del.1999).

bation.[91] However, the Supreme Court did acknowledge that the registration and notification requirements may make it more difficult for the juvenile to obtain employment from certain employers and to establish familial and social relationships.[92]

Also supporting the State's position, the Delaware Supreme Court has held that a trial Judge's failure to inform a defendant before pleading guilty to a charge that would, upon conviction, prevent the defendant pursuant to Title 11, Section 1448(b) from possessing a deadly weapon in the future, does not make such a guilty plea involuntary.[93] Thus, as in the *Modi* decision, *supra*, the consequence of the loss of the right to bear or possess a deadly weapon until the age of twenty-five (25), which follows as a consequence of a juvenile's adjudication to any felony charge, including the felony charge of Title 11, Section 768,[94] is seen merely as a collateral consequence of the adjudication. As such, it would be difficult for this Court to argue that the collateral consequence of losing the right to possess a weapon when adjudicated under Title 11, Section 768 causes directly the forfeiture of a fundamental right to bear arms, which, if that were the case, might subject the review of Title 11, Section 768 to a test of "strict scrutiny."

■ Having discussed the particulars of Title 11, Section 768, as well as the much broader implications for a teenage defendant adjudicated under that statute, the Court's decision, in determining whether the statute violates the juvenile's rights of Equal Protection, is not based upon a strict scrutiny analysis of an inherently suspect classification nor of a fundamental right. The test is clearly whether or not the statutory provisions of Title 11, Section 768, in conjunction with the effect of the teenager defense of Title 11, Section 762(d), and as compared to the Title 11, Section 767 are rationally related to the overall purpose and scheme of our Delaware criminal sex related statutes. This Court does not question the overall legislative policy of these statutes, and, in fact, applauds those policies.

■ Historically, and presently, our Delaware criminal sex statutes have shown several clear policies. Delaware policies have always protected all victims, and afforded special protections to the young. Delaware policies have always looked to protecting the young against violations from adults, and now, against violations by people held in a position of trust. At the same time, especially since the legislation placed into effect in the early 1970s, there was a clear policy to treat our youthful defendants with the recognition of the need to show greater compassion to them because of their immaturity, and the need to abide by the "compelling state interests"[95] to rehabilitate our youth, recognizing the "malleability of youth"[96] The original unlawful sexual contact statute put forth in 1971 did not treat the teenager more harshly than the adult defendant for similar conduct, even when the victims were of different ages. The present broad scheme of our several Delaware sex statutes also do not attempt to treat the youthful offender more harshly than the adult defendant for similar conduct, again,

**91.** *Helman*, 784 A.2d at 1071–1072.

**92.** *Id.* at 1072.

**93.** *Kipp v. State*, 704 A.2d 839 (Del.1998).

**94.** Tit. 11, § 1448(a)(4).

**95.** *State of Delaware v. J.K. and R.T.*, 383 A.2d 283, at 289 (Del.1977).

**96.** *People v. Olivas*, 17 Cal.3d 236, 131 Cal. Rptr. 55, 551 P.2d 375, 385 (1976) citing *In Re Herrera*, 23 Cal.2d 206, 143 P.2d 345 (1943).

irrespective of the age of the victim. It is only in the present wording of Title 11, Section 768 as compared to Title 11, Section 767 that it can be argued that the youthful offender can be treated more harshly than the adult offender. More simply stated, it is arguable that, when considering the broad scheme of all the sex statutes, the application the State seeks against the "teenage defendant" defined by Title 11, Section 762(d) in a charge brought under Title 11, Section 768, does not fall within the overall pattern of the general scheme of the sex-related statutes, and, as such, is not rationally related to that general scheme. On the other hand, when narrowly viewing Title 11, Section 768 on its face, the State is correct that the statute treats a juvenile the same as an adult where an under sixteen (16) year old is the victim, and there is a rational legislative purpose to give special protection to the under sixteen (16) victim.

Regardless of how the Court rules, the State still has the ability to prosecute under Title 11, Section 768 those adults who choose to have unlawful sexual contact with a victim under the age of sixteen (16), even where the sixteen (16) year old victim consented. Nor will this decision eliminate the ability of the State to prosecute all defendants, regardless of age, where the victim is under twelve (12) years of age. And if this Court were to decide that the State does not have the ability to prosecute the teenage defendant, as defined in Title 11, Section 762(d), for Unlawful Sexual Contact in the Second Degree, a Class G felony, as defined in Title 11, Section 768, the State would still have the ability to prosecute such a teenage defendant at the misdemeanor level under Title 11, Section 767.

The arguments raised by the initial Public Defender representing another defendant in a similar and companion case, were arguments worthy of consideration. Unfortunately, when attorneys changed responsibilities in the Office of the Public Defender, these arguments were not developed. In fairness to these defendants, and all defendants who might be charged under Title 11, Section 768, it fell upon the Court to develop the arguments. In doing so, the Court has examined the history and policies of the Delaware sex statutes going back to 1915. The Court has also considered the policies of the Family Court which include the "compelling State interest" [97] to attempt to rehabilitate our youth. The Court also attempted to develop and consider the possible effect collateral consequences should have on this decision, such as a juvenile's loss of the right to bear arms under Title 11, Section 1448(a)(4), or the requirements of sex registration and notification under Title 11, Section 4121. The Court also looked at what rational basis there may be for Title 11, Section 768, both viewing the statute and its purpose narrowly, as well as viewing the statute's position in the broad scheme of the several present day sex statutes and policies.

In addition, this Court has always placed foremost the rights, grievances, and protections of the alleged victims in these cases. As much as the Court's heart goes out to those possible victims, the Court has the duty to assure that the law is constitutional and fair to all who would come under it, both now and in the future. Even if the Court were to set aside the prosecutions for felonies against the defendants, the Court would be confident that the victims' grievances could be properly addressed by charging the defendants under Title 11, Section 767, where adjudication could result in a misdemeanor with

---

**97.** *State of Delaware v. J.K. and R.T.*, 383 A.2d 283, 287 (Del.Supr.1977).

appropriate sanctions for the juvenile, appropriate protections for the victims, and appropriate rehabilitative efforts toward the juveniles in the hope that those juveniles would not again subject these same or other victims to future similar, or more serious, intrusions.

The Court's decision does not rely on the collateral consequence suffered by a juvenile of his or her loss of the right to bear arms. Although the Court's decision also does not rely on the collateral consequence suffered by a juvenile of the lengthy sexual registration notification requirements which would accompany a finding of juvenile delinquency under Title 11, Section 768, this Court believes that the taking away of the privilege of the right to bear arms, which may be kept private to that person, is less publicly harming than the continuing obligation to report one's identity and location with the added reality that their photograph will be posted on the Internet for the general public to view and associate with them.

The Court has focused heavily on the history of both the legislative and Family Court policies. If it were solely up to the Court, the Court's preference would be to focus on the overall broad scheme of all the sex statutes that never impose a harsher consequence on the teenage defendant than on the adult defendant. In taking that approach, the Court would find that Title 11, Section 768, when considering the teenage defendant defined by Title 11, Section 762(2), imposes harsher consequences on teenagers than on adults for similar conduct, regardless of the age of the victim. However, viewed on a narrow basis, Title 11, Section 768 has the obvious purpose of protecting under sixteen (16) year old victims against unlawful sexual contact. Furthermore, in this narrow view of the statute itself, it treats the juvenile and the adult alike. In fact, given the teenage defendant defense of Title 11, Section 762(d), the statute allows the teenager to argue consent whereas the adult cannot raise this argument.

The present unlawful sexual contact statutes have been around with the identical wording since the 1985–86 legislative changes. The "teenage defendant defense" has evolved since 1987 from the "voluntary companion" defense to the present day "teenage defendant defense." Furthermore, the unlawful sexual contact statutes have survived while some major changes occurred to the other sex statutes in 1993, and it must be assumed the Legislature reviewed and was satisfied with the unlawful sexual contact statutes as it made changes to the rest of the sex statutes. Indeed, the very fact that the teenage defendant defense was added and expanded in the past years since 1987 would infer that Title 11, Section 768, which specifically deals with the defendant under sixteen (16) years of age, was reviewed by the Legislature each time that defense was expanded.

Thus, there exists different plausible ways to look at the effect of the statute being questioned in this case. Although this Judge would favor what he believes to be the "broad scheme" approach, the Court must acknowledge that it is clearly "fairly debatable" [98] that the statute viewed narrowly is rationally related to its purpose, that being the protection of under sixteen (16) year old victims from unlawful sexual contact. Certainly, it cannot be said that the statute is "patently arbitrary and bear[s] no rational relationship to a Legislative government interest." [99] For

**98.** *Helman,* 784 A.2d 1058 (Del.2001).

**99.** *Gotleib v. State,* 406 A.2d 270, 275 (Del. 1979).

these reasons, this Court must find that the constitutional arguments of the defendant must fail.

### CONCLUSION

For the reasons heretofore stated, the Court finds that Title 11, Section 768 does not violate the Equal Protection rights of those defendants who are within four (4) years of age of the under sixteen (16) year old victim.

Accordingly, the defendant's motion to dismiss the complaint against the defendant for Unlawful Sexual Contact in the Second Degree is hereby **DENIED. TRIAL** shall be scheduled forthwith.

**IT IS SO ORDERED.**

* Pseudonyms have been assigned to the parties    to protect their identities.